LUCINDA M. CHELLIS *vs.* JEROME W. COLE, et al.

DANIEL S. CHELLIS *vs.* JEROME W. COLE, et al.

York.    Opinion July 16, 1917.

*Fraud.    Misrepresentation in sale of stock as to its value.    Rule as to liability*
*for statements of opinion made in regard to value where*
*the statements were not true.*

Both of these actions are for fraud in the sale of stock in White's Express Company, a New York corporation, doing business in New York City and Brooklyn. By agreement they were reported to the Law Court upon so much of the evidence as is legally admissible, the Law Court to render final judgment thereon.

Daniel S. Chellis was about sixty years old, and had lived for many years, with his wife the other plaintiff, on a farm in a small country town in York County. They had on deposit in the Limerick National Bank in said county five thousand dollars, four thousand in his and one thousand in her name.    The defendant, Mills, was from New Haven, and a stranger to the plaintiffs, while Cole was a neighbor, and was known to them as a successful trader and business man.

In March, 1911, the defendants drove to the plaintiffs' home, where Cole introduced Mills to the plaintiffs.    They requested to be taken into the house as they wished to do some business with the plaintiffs.    On this and successive visits several hours were spent by the defendants in the Chellis home persuading the plaintiffs to buy stock in the express company which Mills claimed to represent.    He made many representations as to the assets, liabilities, and general financial condition of the company which, had his statements been true, would have shown the stock to be a perfectly safe investment.    While a printed statement of the company's affairs was referred to, the accuracy of all therein contained was vouched for by Mills as being true within his own knowledge, because of a careful investigation of the company by Mills and an expert on which they had spent some weeks.    Cole repeatedly assured the plaintiffs that the stock was a good investment, the company a safe place to put their money, better than the banks, and as secure an investment as some bonds which he owned and which he exhibited to them.    During his visits Cole made many other assuring and alluring statements of a similar nature, all tending to allay any doubts in the minds of the plaintiffs and to induce them to credit the representations made by his companion.

On the strength of the representations and assurances so made Daniel Chellis withdrew four thousand dollars from the bank and his wife one thousand dollars, which they invested in the stock of the express company.    At least one thousand dollars of this money was received by Cole.

It is plain that this stock when purchased was worthless and the company insolvent at the time the representations were made.   In a few months the company was adjudged a bankrupt paying a dividend of ten per cent with a possible final dividend of five per cent.

For the damages suffered by the plaintiffs Mills is liable.   Cole cannot escape legal responsibility on the ground that his expressions were mere statements of opinion.   On his judgment the plaintiffs relied and but for his assurances the plaintiffs would not have been defrauded.   The rule of caveat emptor cannot be invoked as a shield to protect him in making false or reckless expressions of opinion.   He posed as a disinterested friend and neighbor on whose judgment and opinion this old couple could safely rely.   Even if his views were given in the form of opinions, they should have been honest and truthful and not reckless.

The defendants seek to avoid liability on the ground that the stock was redeemable by the company at par if presented and the plaintiffs had never presented it for redemption.   This was not a right which stockholders had, but was a right reserved by the company to call in the stock on or before a certain date. Moreover as the company was insolvent any effort to have the stock redeemed would have been futile.

Judgment must therefore be rendered for the plaintiffs for the amounts out of which they were defrauded.                                                               `

Action on the case to recover damages on account of deceit, false representation and fraud on the part of the defendants in representing the value of certain stock sold to the plaintiffs by the defendants Cole and Mills.   The two actions were tried together.   Defendants filed plea of general issue.   By agreement both cases were reported to the Law Court upon so much of the evidence as is legally admissible, the Law Court to render final judgment thereon.   Judgment in accordance with opinion.

Case stated in opinion.

*J. Merrill Lord, and Matthews & Stevens*, for plaintiffs.

*Emery & Waterhouse*, for defendants.                                        .

SITTING:   CORNISH, C. J., BIRD, HALEY, HANSON, MADIGAN, JJ.

MADIGAN, J.   Both of these actions are for fraud in the sale of stock of White's Express Company, a New York corporation, doing business in New York City and Brooklyn.   By agreement they were reported to the Law Court upon so much of the evidence as is legally admissible, the Law Court to render final judgment thereon.

Daniel S. Chellis was about sixty years old, and had lived for many years with his wife, the other plaintiff, on a farm in a small country town in York County.   They had on deposit in the Limerick National Bank in said county five thousand dollars, four thousand in his and one thousand in her name.   The defendant, Mills, was from New Haven, and a stranger to the plaintiffs, while Cole was a neighbor, and was known to them as a successful trader and business man.

On March 21, 1911, the defendants drove into the yard of the plaintiffs' home, and Cole introduced Mills to Mr. Chellis, and asked him to take the defendants into the house, as they wished to have some talk with them, Chellis and his wife.   On that and two or three succeeding days on which the visits were repeated several hours were spent in trying to induce the plaintiffs to buy stock in the express company which Mills claimed to represent.   A lengthy statement purporting to show the exact state of the company's assets and liabilities was exhibited and explained.   Mills vouched for the truth of everything therein contained, stating that with an expert he had recently spent some weeks making a complete examination of the affairs and condition of the company.   He further represented that its property was fully insured, and its business was so flourishing that the officers were obliged to build additional buildings constantly, and that the company owned all of its real estate and terminals.   The plaintiffs were repeatedly assured that everything about the company was all right and that the stock was an excellent investment.

Because of the representations and allurements and advice of the defendants Daniel Chellis bought four hundred shares of the stock, paying therefor four thousand dollars, and his wife bought one hundred shares, paying therefor one thousand dollars.   Four quarterly dividends at the rate of seven per cent per annum were paid, but the evidence clearly shows there was nothing in the condition of the company to warrant any one of these dividends.   There is not the least doubt that the company was hopelessly insolvent when the stock was sold to the plaintiffs, and in the latter part of 1911 the company was in the hands of a receiver, and early in 1912 it was in bankruptcy.   A dividend of ten per cent was paid the creditors with the prospect of a possible further final dividend of five per cent.   The representations made to the plaintiffs by Mills were untrue in fact, and of his liability therefore there is no question.   *Wheelden* v. *Lowell,* 50 Maine, 499; *Goodwin* v. *Fall,* 102 Maine, 353; *Litchfield* v. *Hutchinson,* 117 Mass., 195.

The defendants contend that Cole is not liable because at the most his expressions were merely those of opinion. His conduct and statements were the controlling influence whereby the plaintiffs were defrauded. He was known to the plaintiffs to be a shrewd and successful business man, and was not supposed by them to be interested in the sale of the stock. On three occasions he drove with the defendant, Mills, in a buggy, a distance of four miles, to their home, sat by and participated in Mill's conversation. He repeatedly assured the plaintiffs that the stock was all right, that it was a safe investment, that they would make no mistake in taking their money from the bank and buying this stock, that it was just as good as the bonds, which he exhibited to them. A check for $1000, given by Daniel S. Chellis for a portion of this stock, made payable to the order of Chas. E. Mills, Agent of White's Express Company, was endorsed by Mills as agent, to Cole, who evidently received cash for the same at the bank, as the check bears no further endorsement. While it is not necessary for the maintenance of this action to show collusion between Cole and Mills, this unexplained as it is, is strong presumptive evidence that Cole was personally secretly profiting by the sale of this stock to the defendants. In *Adams* v. *Collins*, 196 Mass., 422, we find the following: "The defendant contends that the evidence showed his statement was made as a matter of opinion and not as a representation of a fact, and that he was not liable therefore, but he was the third party with no interest so far as appears in the trade and he was bound to act honestly and in good faith, not only in regard to matters of fact but also in regard to matters of opinion. If he undertook to express an opinion, he was bound to give his honest opinion. He had not the same latitude as a seller for the reason that the buyer in dealing with the seller would naturally be supposed to be on his guard, whereas he would not be on his guard in dealing with a disinterested third person. Being liable for a false representation as to his opinion, as well as for a false representation in respect to a matter of fact, it is immaterial which the allegations were construed by the presiding judge to be." Also *Medbury* v. *Watson*, 6 Met., 259. "There is a marked and obvious distinction between the cases in which there is a false affirmation by the vendor to the vendee, where the maxim 'caveat emptor' applies, and those upon the false representations of a third person with regard to the value of the property. In the one, the buyer is aware of his position; he is dealing with the

owner of the property, whose aim is to secure a good price, and whose interest is to put a high estimate upon his estate, and whose great object is to induce the purchaser to make the purchase; while in the other, the man who makes the false assertions has apparently no object to gain, he stands in the situation of a disinterested person, in the light of a friend, who has no motive nor intention to depart from the truth and who thus throws the vendee off his guard, and exposes him to be misled by the deceitful representations." Also *Andrews v. Jackson*, 168 Mass., 266. In this case the defendant was turning over in part payment of land, certain notes of a third party. The defendant represented that the notes were as good as gold, and told the defendant he had lent money to the maker, saying:—'Do you suppose I would lend my money to anyone that was not good?' Held, that the evidence was sufficient to warrant a finding that the false representations were actionable."

The court says that "It is true that such a representation may be and often is a mere expression of opinion, but we think it may be made under such circumstances and in such a way as properly to be understood as a statement of fact upon which one may rely."

In *Safford* v. *Grout*, 120 Mass., 20, the representation was that the maker of a note was of ample means and ability to pay said note and that the note was good. The court says that these were statements of facts susceptible of knowledge, as distinguished from mere matters of opinion or belief. In the case at bar made under the circumstances that it was made, the statement of Cole that the stock was a safe investment, that it was as good as his bond, that it was safer than the bank, is seemingly an approval of all representations made by Mills as to the assets and liabilities of the company. These statements were made in conjunction with those made by Mills. The value of the stock depended upon the amount of stock paid in and upon the available assets and liabilities. A statement that the stock was good and a safe investment was equivalent to an assertion that the express company was solvent. The plaintiffs relied upon him and not upon Mills, who unassisted by Cole never would have defrauded the plaintiff. Under the decisions above quoted Cole is equally liable in these actions.

But the defendants say that there was an existing contract between the plaintiffs and the White's Express Company, by virtue of which the plaintiffs were entitled to redeem their stock at any time and

receive for each share of stock the sum of $11.50, and as the stock had never been tendered to the White's Express Company, the actions are premature and not maintainable. This contention is based upon the following clause in the certificates of preferred stock. "This stock is subject to redemption at $11.50 per share." The prospectus of the express company exhibited to the plaintiffs at the time of the sale and on file in the case as plaintiffs exhibited No. 27, interprets that clause as follows: "The Company reserves the express right to call in the preferred stock at 115, which is $11.50 a share with accumulated and accrued dividends, in whole or in part, on or before January 1, 1916." As this placed the call of the stock at the option of the express company and not at the option of the plaintiffs, the plaintiffs certainly could not have been at fault. Furthermore it is clear that the company was bankrupt when the stock was sold, and was in no better condition when it ceased paying the dividends, which must have come from money belonging to the creditors and not to the stockholders. Any attempt to have the stock redeemed by White's Express Company must therefore have been a waste of energy. These actions are not for breach of contract, but are actions of deceit based on false representations in regard to the stock sold to the plaintiffs. The measure of damages is the difference between the actual value of the stock at the time of the purchase and its value if it had been what it was represented to be. The tender of the stock to the express company was therefore unnecessary. *Andrews* v. *Jackson*, 168 Mass., 269; *Morse* v. *Hutchins*, 102 Mass., 439.

> *Judgment against both defendants in favor of Daniel S. Chellis for $4,000 with interest, from date of writ.*
>
> *Judgment against both defendants in favor of Lucinda Chellis for $1,000 with interest, from date of writ.*