The WENDWARD CORPORATION and
Wendward Realty Corporation

v.

GROUP DESIGN, INC. and MAINE
TEST BORINGS, INC.

v.

Richard F. BASTOW and Donbury, Inc.

Supreme Judicial Court of Maine.

Argued Nov. 14, 1980.

Decided April 7, 1981.

58

Lowry, Platt & Givertz and Robert D. Platt (orally), Donald Grey Lowry, Portland, for plaintiff.

Preti, Flaherty & Beliveau, Daniel Rapaport (orally), Jonathan S. Piper, Portland, for Maine Test Borings, Inc.

Verrill & Dana, John W. Philbrick (orally), Portland, for Group Design, Inc.

Norman & Hanson, John M. Wallach, Bernstein, Shur, Sawyer & Nelson, Peter J. Rubin, Portland, for Donbury, Inc.

John R. Linnell, Auburn, for Bastow.

Before McKUSICK, C. J., and WERNICK, GODFREY, ROBERTS and CARTER, JJ.

ROBERTS, Justice.

The Wendward Corporation and Wendward Realty Corporation (Wendward) appeal from a judgment entered in the Superior Court on the report of a referee. The only issues presented by the parties relate to the amount and nature of damages awarded to Wendward. At oral argument we raised a question concerning the timeliness of Wendward's objections to the referee's report.[1] We find the record does not establish a procedural default by Wendward, and we affirm the judgment as modified herein.

I.

Sixteen days after the filing of the referee's report, Wendward filed a motion which recited, *inter alia*, that Wendward had "seasonably filed objection to the report of the referee." No prior objections had been filed by Wendward. In response to our inquiry at oral argument, Wendward suggests that M.R.Civ.P. 53(e)(2) only requires that one "*serve* written objections upon the other parties." We remind counsel that M.R.Civ.P. 5(d) compels the *filing* of all papers required to be served upon a party and that the last sentence of Rule 53(e)(2) suggests the necessity of *timely* filing of objections. Furthermore, Rule 53(e)(2) has been interpreted as mandating the filing of objections in order to obtain Superior Court and Law Court review of a referee's findings. *Smith v. Tonge*, Me., 361 A.2d 254 (1976); *Thompson v. Willette*, Me., 353 A.2d 176 (1976).

We reaffirm that sound appellate procedure precludes our review of objections to a referee's report unless the *specific*

---

1. M.R.Civ.P. 53(e)(2) reads in part:

Except where ... waiver occurs, any party may within 10 days after being served with notice of the filing of the [referee's] report serve written objections upon the other parties. ... If no objections have been timely filed, the court shall forthwith enter judgment on the referee's report.

objections have been *timely* filed in the Superior Court. In each of our prior cases, however, the record has disclosed affirmatively that (1) notice of the filing of the referee's report had been given and (2) objections were not filed, *Thompson v. Willette, supra,* or were filed late, *Smith v. Tonge, supra. See also National Advertising Co. v. Inhabitants of Town of York,* Me., 345 A.2d 512 (1975); *Adams v. Alley,* Me., 340 A.2d 201 (1975). In the present case we do not have a sufficient record showing affirmatively when notice of the filing of the referee's report was given. We find, therefore, the objections contained in Wendward's motion sufficient to permit our review of them on appeal.

## II.

In May of 1976 Wendward was engaged in the development of Wendy's restaurants at three sites in Maine. One of those sites was in Auburn and is the subject of this litigation. Wendward hired Group Design, Inc. (Design), a professional architectural association and one of the two defendants herein, to assist in planning and supervising the construction of the Auburn restaurant. In late August of 1976, Wendward and Design agreed that subsurface soil samples or borings should be taken at the Auburn site. By September 2, 1976, Design had retained the services of Maine Test Borings (Borings), the second defendant, to conduct the subsurface soil testing. On September 8, 1978, Borings, without any supervision of Design, took soil samples at the wrong site. The test results taken at the wrong location were conveyed to Design on September 17. The lease for the actual site was formally executed by Wendward on September 24, 1976, seven days later.

It is undisputed on appeal that Design and Borings were negligent. As a result of this negligence, the true subsurface conditions of the actual site were not revealed until October 15 when construction of the foundation was already in progress. In fact, the actual site's top-fill camouflaged pervasive rubbish and junk deposits. Such subsurface conditions could not support a structure of the type planned by Wendward. Accordingly, sometime after October 26, 1976, Wendward removed the foundation which had been erected, excavated the trash, refilled the site with gravel, and once again began construction of the restaurant. The restaurant was finally opened on February 17, 1977, although its parking lot was not paved until a month and one-half later.

After Wendward filed suit against Design and Borings, the co-defendants filed cross-claims against each other and impleaded a third party, Donbury, Inc., the general contractor. By agreement, the case was referred to a referee pursuant to M.R. Civ.P. 53. On the basis of extensive testimony taken over a three-month period (19 volumes of transcript), the referee found for Donbury, Inc. on the third-party complaint. The referee found both defendants negligent and attributed 75% of causative fault to Borings and 25% to Design. He assessed total damages in the amount of $16,092. The Superior Court adopted the referee's report with two modifications that reduced the damages awarded to $7,885.

Wendward contests the final award of damages on three grounds. First, Wendward challenges the referee's exclusion of costs directly related to removing the rubbish deposits and making the site suitable for building. Second, Wendward challenges the Superior Court's modification of damages awarded by the referee by excluding winter protection costs and additional professional fees. Finally, Wendward contends that the evidence compelled an award of damages for loss of use based on a fair market rental value and for lost business attributable to the unpaved parking lot. We agree with Wendward's second contention only.

## III.

The referee awarded damages for the cost of the foundation that had to be torn down, the excavation incidental to that work, additional engineering and soil analysis fees, and the lease rental for two months. Wendward contends that an addi-

tional $20,457.85 should have been awarded representing the cost incurred by Wendward in removing the rubbish deposits underlying the site and the cost of making the site suitable for building. Wendward claims such damages as a matter of law as the benefit of its bargain, namely a lease for land the subsurface conditions of which were as defendants represented them to be.

Wendward cites a variety of Maine cases involving fraudulent misrepresentation and deceit where such damages have been awarded. *E. g., Chellis v. Cole*, 116 Me. 283, 101 A. 444 (1917) (misrepresented value of stock); *Adams v. Burton*, 107 Me. 223, 77 A. 835 (1910) (deceit and misrepresentation in sale of land); *Mullen v. Eastern Trust and Banking Company*, 108 Me. 498, 81 A. 948 (1911) (misrepresentation in sale of bonds). Further, Wendward notes that the measure of damages in attorney malpractice cases for failure to discover a title defect is the cost of removing the encumbrance. *E. g., Jacobson v. Peterson*, 91 N.J.L. 404, 103 A. 983 (1918). In such cases, however, a causal connection between the defendant's negligence or fraud and the harm for which the plaintiff claims damages was established by proof of reliance. Accordingly, the referee's finding that the terms of the lease were not affected by the defendants' negligence, if supported by competent evidence, warrants the exclusion of so-called benefit of the bargain damages.

In his report, the referee wrote:

In assessing the proof of damages I find that if the borings had been properly taken and reported and the actual subsurface conditions revealed, plaintiff would have nevertheless proceeded to do what was necessary to continue construction. This would have included a deep excavation, removal of all dump material and a compacted fill to the necessary level. Therefore, portions of the outlay attributable to work which would have had to be done in any event cannot be included in an award of damages.

Viewed in isolation, the referee's finding that "the plaintiff would have nevertheless proceeded to do what was necessary to continue construction" does not necessarily mean that Wendward's lease negotiations were unaffected by the defendants' negligence. Read against the background of the record, however, it clearly implies the referee found no causal link between the defendants' negligence and the negotiation of the lease terms. Rather, he appropriately limited damages to those costs which could be directly traced to the *delay* in discovering the true subsurface soil conditions.

Even if such an implication were not clear, we must assume for purposes of appellate review that the referee and, in turn, the Superior Court, by adopting the referee's report,[2] found all the facts necessary to support the decision in light of the applicable law. *Jacobs v. Boomer*, Me., 267 A.2d 376 (1970). Ample evidence exists on the record to support the conclusion that the defendants' negligence did not affect the terms of the lease. Exhibits and testimony at trial indicated that the lease's material provisions were agreed upon before the matter of taking test borings was ever discussed, and that execution of the lease simply awaited formal issuance of a building permit. Whitten Humphreys, Wendward's chief officer, testified that the site's proximity to competitive fast food restaurants and the general traffic flow in the area were particularly important features commending selection of the site. He noted that the monthly rental of the site was set early in the negotiation process and was never a point of contention. He seemed intent on developing a positive working relationship with the lessor, an established and respected businessman. Finally, other testimony indicated that soil conditions were not tested before purchase of another Wendy's site being developed by Wendward in Maine, and at still another Maine site, no testing occurred at all. We think such evidence amply supports the necessary finding

---

2. Pursuant to M.R.Civ.P. 52 the findings of a referee are deemed to be those of the Superior Court to the extent they are adopted by the Superior Court. *See,* R. Field, V. McKusick & L. K. Wroth, *Maine Civil Practice* § 52.7 (1970).

that defendants' negligence did not affect Wendward's negotiation of the lease. Thus, limiting damages to those costs that the appellants incurred because of the delay in discovery of the true subsurface conditions was not error. *See Gagne v. Bertran*, 43 Cal.2d 481, 275 P.2d 15 (1954).

IV.

The Superior Court sustained the defendants' objections to inclusion of winter protection costs ($6,641) and fees for additional soil analysis and engineering services undertaken by Jordan Gorrill Associates ($1,566). The court concluded that these costs could not be included as damages because the report and record indicated they would have been incurred irrespective of defendants' negligence. Thus, total damages recommended by the referee were reduced by $8,207 ($6,641 + $1,566), and final judgment was entered for a sum of $7,885.

■ Wendward contends that the Superior Court's modification of the referee's report was in error. We agree. M.R.Civ.P. 53(e)(2) provides that the Superior Court "shall adopt the referee's findings of fact unless clearly erroneous." Rule 53 has not changed the well-established principle that the referee's finding is final if supported by credible evidence and not otherwise erroneous as a matter of law. *Pendleton v. Sard*, Me., 297 A.2d 889, 891 (1972). This Court's task, therefore, is to determine whether there is credible evidence that the disputed expenses were caused by defendants' negligence.

Even a cursory review of the record reveals such evidence. The erroneous soil test results were received by Design on September 17, 1976, and about one month elapsed before the error was discovered. Further delay occurred because new borings had to be made by Jordan Gorrill and the foundation which had been erected had to be removed before the site could be made suitable for building. The actual construction continued more than two months beyond the expected completion date of December 15, 1976, and well into the more severe winter months, thereby increasing winter protection costs. As for engineering fees, the record is clear that portions of the services rendered by Jordan Gorrill were necessary to determine exactly what the original test borings should have determined. While all the costs for winter protection and additional engineering services may not be attributed to the defendants' negligence, clearly some of those costs must be. The referee in assessing damages adjusted these expenses downward, reflecting his earlier holding that only additional work could be included. The Superior Court erred in excluding entirely these two items from the award of damages.

V.

Finally, Wendward contends that the referee erred in failing to award fair market rental value for loss of use of its property when the site correction work occurred and in failing to award damages for business lost because the site's parking lot went unpaved for one and one-half months after the restaurant opened. Wendward's contentions are without merit. With respect to the two items Wendward claims should have been included in the award of damages, the referee found:

> An award of damages may not be the result of guess, speculation, or conjecture. Applying this test, I am unable to assign any dollar value to the claimed loss of fair market rental value.
>
> Applying the same test I am unable to assign any dollar value to the claimed loss of business during the spring thaw of 1977 while the parking lot remained unpaved.

The referee did, however, award Wendward $2,000 representing two months' rent under Wendward's lease.

■ This Court has required special damages to be proved to a reasonable certainty. *E. g., Michaud v. Steckino*, Me., 390 A.2d 524 (1978); *McDougal v. Hunt*, 146 Me. 10, 76 A.2d 857 (1950). The burden of proving such damages rests on the plaintiff. *Dairy Farm Leasing Co., Inc. v. Hartley*, Me., 395 A.2d 1135 (1978). Often the harm resulting from negligence may be compensable under alternate measures of damages. *E. g., Gamble v. Smith*, 386 A.2d 692 (D.C.

App.1978); *Mullan v. Hacker,* 187 Md. 261, 49 A.2d 640 (1946). That measure which most precisely compensates a plaintiff for its loss and which may be used without conjecture or speculation should be applied. In the case before us, the referee found the evidence of the realty's fair rental value to be speculative. For the same reason, he refused to award damages for lost business attributable to the unpaved parking lot.

▅ In reviewing the record, we conclude that the referee's refusal to award damages for lost use as measured by fair rental value and his concomitant award of damages for rent due under Wendward's lease was not only supported by credible evidence but was especially appropriate. The record reveals that Wendward had withheld payment for equipment and building materials during the corrective work. Yet, Wendward's expert testimony on fair rental value was based in part on the rental value of the materials and equipment. Other assumptions made by Wendward's expert witness were challenged on cross examination in a way that could have led the referee to question the witness's opinion. Similarly, the opinion of Wendward's own chief officer as to fair market value, could have been affected by interest. In contrast to this evidence, evidence that the site's lease obligated Wendward to pay $1,000 per month was undisputed by the parties. By awarding a sum of $2,000 for the two-month delay caused by defendants' negligence, the referee did not err.

▅ The only testimony relating to the loss of business allegedly incurred by Wendward during the month and one-half that the restaurant's parking lot went unpaved was offered by Humphreys, Wendward's chief officer, and Anthony Rousseau, an employee of Wendward. Here again witness interest may well have influenced the referee's findings. We cannot say that the referee's failure to be persuaded on be claim for loss of business was clearly erroneous.

With the exception of the reinstatement of winter protection costs and engineering fees in the Superior Court's award of damages, we affirm the judgment below.

The entry is:

Judgment of the Superior Court modified to include $8,207 additional damages for a total of $16,092 and, as modified, affirmed.

Costs on appeal allowed to appellants.

All concurring.