**FIREMAN'S FUND INSURANCE CO.**
**as Sobrogee of Berkeley Hotels**
**Management, Plaintiff,**

v.

**Maurice F. CHILDS, Jr., Defendant.**

**No. Civ. 99–CV–56–P–C.**

United States District Court,
D. Maine.

June 1, 1999.

Samuel K. Rudman, Lambert, Coffin, Rudman & Hochman, Portland, Maine, for plaintiff.

Rebecca H. Farnum, Thompson & Bowie, Portland, Maine, for defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

This is a subrogation action brought by Plaintiff, Fireman's Fund Insurance Co., against Defendant, Maurice F. Childs, Jr., to recover $200,000 dollars that it paid to Berkeley Hotels Management, Inc. ("Berkeley") plus punitive damages for property damage to the Portland Jetport Hotel ("the Jetport Hotel") incurred during a storm because of Defendant's allegedly defective design and construction of the hotel. Plaintiff's sole claim in the Complaint alleges that Defendant was negligent in designing and constructing the Jetport Hotel, thereby causing the property to incur severe water damage during the storm (Docket No. 1). Before the Court is Defendant's motion to dismiss (Docket No. 2) and Plaintiff's objection thereto (Docket No. 3). For the reasons stated below, the Court will certify the question raised by this motion to the Maine Supreme Judicial Court.

## BACKGROUND

Because upon a motion to dismiss the Court must take a plaintiff's allegations as true, the Court will set forth the facts as alleged in Plaintiff's Complaint. In or about 1988 and 1989, Defendant designed, engineered, and/or supervised and inspected the construction of the Jetport Hotel for the Dunfey Group. *Id.* ¶ 4.[1] Berkeley

---

1. Plaintiff admits that the extent of Defendant's involvement in the design and the construction of the Jetport Hotel is unknown at this point in the litigation. However, CBT's identification block on the plans for the hotel includes the official seal of Defendant and signifies that Defendant is a registered architect in the state of Maine. See Plaintiff's Objection to Defendant's Motion to Dismiss at 2 (Docket No. 3). The Court will assume, as

purchased the Jetport Hotel from the Dunfey Group in 1992 and, from then on, owned and managed the hotel. Complaint ¶ 5; Plaintiff's Objection to Defendant's Motion to Dismiss (Docket No. 3) at 3. On October 21, 1996, the Jetport Hotel was damaged as a result of water incursion and flooding that resulted in the loss of its use. *Id.* ¶ 6. At all times material hereto, Plaintiff provided insurance coverage under a policy of insurance to Berkeley with respect to the Jetport Hotel, and such insurance was in effect in October 1997. *Id.* ¶ 7

The water damage allegedly was due to Defendant's negligent design and construction of the building. Specifically, Defendant negligently designed and constructed the "masonry facade" and "weep holes" on the building so that they lacked necessary and adequate paths for the drainage of rainwater accumulated during foreseeable weather conditions. *Id.* ¶ 10(b)(c). Defendant also failed to supervise and properly train his employees during the construction of the building and failed to warn Plaintiff of the weaknesses, deficiencies and defects in the design of the building. *Id.* ¶ 10(d)(e).

## DISCUSSION

"When evaluating a motion to dismiss under Rule 12(b)(6), the court takes the well-pleaded facts as they appear in the complaint, extending the plaintiff every reasonable inference in [its] favor." *Pihl v. Massachusetts Dep't of Educ.*, 9 F.3d 184, 187 (1st Cir.1993). The defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *Roma Const. Co. v. aRusso*, 96 F.3d 566, 569 (1st Cir.1996). The Court, however, need not credit "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 55 (1st Cir.

it must for purposes of a motion to dismiss, that Defendant was the architect who de-

1990). If the "facts narrated by the plaintiff do not at least outline or adumbrate a viable claim, [its] complaint cannot pass Rule 12(b)(6) muster." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir.1988).

■ The parties agree that Maine law governs this action. In Maine, certification to the Supreme Judicial Court is authorized by 4 M.R.S.A. § 57, which provides in relevant part:

When it shall appear to the Supreme Court of the United States, or to any court of appeals or district court of the United States, that there are involved in any proceeding before it one or more questions of law of this State, which may be determinative of the cause, and there are not clear controlling precedents in the decisions of the Supreme Judicial Court, such federal court may certify any such questions of law of this State to the Supreme Judicial Court for instructions concerning such questions of state law, which certificate the Supreme Judicial Court sitting as a law court may, by written opinion, answer.

*See also* M.R.Civ.P. 76B(a). Under section 57, this Court may certify a question of state law to the Supreme Judicial Court if it finds that there is no clear, controlling state-law precedent. *See Nuccio v. Nuccio*, 62 F.3d 14, 17 (1st Cir.1995). In addition, certification is appropriate only if there is no dispute as to the material facts, and the Supreme Judicial Court's answer to the proposed state-law question will, "in at least one alternative, be determinative of" the federal cause. *Lovell v. One Bancorp.*, 614 A.2d 56, 57 (Me.1992). As discussed below, whether the economic loss doctrine applies to the fact of this case is an unsettled question under Maine law and the answer to that question would be determinative of Plaintiff's tort claim.

■ The premise of Defendant's motion to dismiss is that the economic loss doc-

signed the Jetport Hotel.

trine bars Plaintiff's tort claim against him. Plaintiff disagrees. The economic loss rule, adopted by the majority of states, including Maine, marks the fundamental boundary between the law of contracts, which is designed to enforce expectations created by agreement, and the law of torts, which is designed to protect citizens and their property by imposing a duty of reasonable care on others. Sidney R. Barrett, Jr., *Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis,* 40 S.C.L.Rev. 891, 894–95 (1989). In order to preserve the bright line between contract and tort law, the rule prohibits the recovery of purely economic losses in tort actions. *See Oceanside at Pine Point Condominium Owners' Ass'n v. Peachtree Doors, Inc.,* 659 A.2d 267, 270 (Me.1995). Economic loss has been defined as " 'damages for inadequate value, costs of repair and replacement of defective product, or consequent loss of profits—without claim of personal injury or damage to other property.' " *Id.* at 270 n. 4 (quoting *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443, 449 (Ill.1982)). In adherence to this doctrine, courts do not permit tort recovery for a defective product's damage to itself or, in other words, where the injury suffered is merely the failure of the product to work properly rather than personal injury or resulting injury to other property. *See id.* at 270. In *Oceanside v. Peachtree Doors, Inc.,* the Maine Law Court has expressly adopted this rule for the state of Maine. *See id.*[2]

The doctrine requires courts to distinguish between a situation where the injury suffered is merely the "failure of the prod-

uct to function properly, . . . [and] those situations, traditionally within the purview of tort, where the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property." *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 868, 106 S.Ct. 2295, 2300, 90 L.Ed.2d 865 (1986) (citations omitted). "The rationale underlying this rule is that damage to a product itself 'means simply that the product has not met the customer's expectations, or, in other words, that the customer has received "insufficient product value.' " The maintenance of product value and quality is precisely the purpose of express and implied warranties." *Oceanside,* 659 A.2d at 270 (quoting *East River S.S. Corp.,* 476 U.S. at 872, 106 S.Ct. at 2302–03) (citation omitted). Thus, "when a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong." *East River,* 476 U.S. at 871–72, 106 S.Ct. at 2302. Pursuant to the doctrine, parties are left to their contractual remedies in cases seeking recovery of economic losses—the cost of repair, replacement, or loss of use—where only injury to a product itself has occurred and may not recover under a tort cause of action.

In applying the economic loss doctrine, the Court must first determine whether, according to the facts alleged in the Complaint, Plaintiff's losses are purely economic. Specifically, the Court must discern whether the allegedly negligently designed product in this case has injured only itself or whether the product caused injury to other property. In the Complaint, Plaintiff contends that the Jetport Hotel suf-

---

**2.** In so doing, Maine parted ways with the ten states that adhered to the minority view that economic losses are recoverable in actions sounding in tort law. The minority approach is based on the following premises: 1) it is arbitrary to allow recovery for economic losses if a plaintiff suffers bodily injury or property damage but not if a product injures itself; 2) there is no inherent difference between economic loss and personal injury or property damage because all are proximately caused

by defendant's negligence; and 3) a manufacturer can predict and insure against product failure. In East River, the Supreme Court criticized this approach for "failing to account for the need to keep products liability and contract law in separate spheres and to maintain a realistic limitation on damages." *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 870–71, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986).

fered water damage because of the faulty design of the masonry facade and weep holes. "In the context of claims based on defective components, most courts have held that the relevant 'product' is the finished product into which the component is integrated." *Sebago, Inc. v. Beazer East, Inc.,* 18 F.Supp.2d 70, 90 (D.Mass.1998) (citing cases).

■ The so-called "integrated products rule" is premised on the view that one must look to the product purchased or bargained for by the plaintiff rather than to the particular product sold by the defendant. *See id.* at 91. The masonry facade and weep holes are components that are integrated into the finished hotel purchased by Berkeley. Hence, because Plaintiff alleges that the faulty facade and weep holes caused damages to the hotel, the damages caused by any defects in these components constituted damages only to the product itself and not damages to "other property." *See Oceanside,* 659 A.2d at 271 (no recovery for building water damage caused by defective windows because plaintiff owners purchased completed condominium units and not windows); *see also Washington Courte Condominium Association–Four v. Washington–Golf Corp.,* 150 Ill.App.3d 681, 103 Ill.Dec. 752, 501 N.E.2d 1290, 1294 (1986). Furthermore, the relevant product is the product as it is viewed from the purchaser's prospective. *See Sebago,* 18 F.Supp.2d at 92. Here, the subrogor of Plaintiff purchased, from a prior owner, the Jetport Hotel in its entirety, with masonry facade and weep holes in place and, thus, the relevant product from the purchaser's perspective, as it must be viewed, is the entire hotel. Accordingly, in the instant case, the Jetport Hotel is the relevant product and the water damage to the Jetport Hotel, allegedly caused by negligently designed masonry facade and weep holes, is damage to the product itself.

Plaintiff contends that the Complaint, pursuant to a notice pleading standard, sufficiently supports an allegation for damages to "other property." The Court disagrees. Plaintiff alleges that on October 21, 1996, Berkeley sustained "destruction and damage to the premises, including the loss of use thereof." Complaint ¶ 6. The term "the premises" is defined as the hotel. *Id.* ¶ 5. Nowhere in the Complaint does Plaintiff attempt to allege that damages were ascertained by property other than "the premises" that it explicitly defines as the hotel. Thus, the amount of $200,000 that Plaintiff provided Berkeley in insurance payments to repair the Jetport Hotel are economic losses, and Plaintiff's negligence claim is potentially barred by the economic loss doctrine.

■ The question remains, however, whether the economic loss doctrine applies to this case in the first instance. Plaintiff raises two circumstances that make application of the doctrine to the foregoing facts unclear: (1) this action arises from Defendant's allegedly negligent rendering of professional *services,* as opposed to its manufacturing or selling of a product and (2) neither Berkeley nor Defendant were signatories to the sales contract.[3] Plaintiff characterizes the rule's rationale as barring tort claims in favor of contract claims only in cases where the purchaser of a defective product suffers damage limited to the product itself because such damages amount only to disappointed contractual expectations. Permitting the economic loss doctrine to apply to a case involving negligently rendered services where the parties are not in privity of contract, according to Plaintiff, would stretch the doctrine farther than the Law Court intends.

No court has decided whether, under Maine law, the economic loss doctrine applies to bar a claim for damages to a product where there is no contract be-

---

**3.** Plaintiff explains that Defendant Childs was not a signatory to the contract. Rather CBT, Defendant's employer was the actual signato-

ry. *See* Plaintiff's Objection to Defendant's Motion to Dismiss at 3.

tween the parties and the claim involves the negligent rendering of services rather than the manufacture or sale of the product. Plaintiff cites two cases that were decided before *Oceanside* to support its proposition that the doctrine is not intended to apply to claims between parties who are not in privity of contract or to suits against professional service providers.

Plaintiff's first case, *Wendward Corp. v. Group Design, Inc.*, 428 A.2d 57, 59 (Me. 1981), involved a claim brought by a restaurant corporation against an architectural corporation in tort for negligently providing soil analysis and engineering services to plaintiff. In that case, the plaintiff sought, and was awarded, economic damages including expenses it incurred for the cost to repair and excavate its building site, additional engineering and soil analysis fees, and lease rental payments it would not have incurred but for the defendant's negligence. *See id.* at 59–60. Although the Law Court did affirm the award of damages for some elements of purely economic loss caused by the negligence of a professional architectural association, the Law Court did not discuss the economic loss doctrine and its applicability to the facts of the case. Furthermore, the decision in *Wendward* was rendered before the Law Court's decision in *Oceanside.* Thus, the Law Court decided for the first time *after Wendward* that the doctrine *did* apply to some cases, leaving the meaning of *Wendward* unclear. Hence, *Wendward* is not unassailable evidence that the Law Court would decide that the economic loss doctrine does not also apply in cases against professional service providers under Maine law.[4]

The second case cited by Plaintiff, *Inhabitants of the City of Saco v. General Elec. Co.*, 779 F.Supp. 186, 188, 195 (D.Me. 1991), was a negligence action against a company that served as architect, engineer, and general contractor for the construction of a power plant that generated excessive noise, odor, and ash particulate emissions which irritated and annoyed the inhabitants in surrounding communities. The defendant argued that the plaintiff could not recover for alleged negligence and professional malpractice because it alleged only economic injury. After determining that the plaintiff's complaint did not allege damage other than economic loss, this Court set out to determine whether the economic loss doctrine applied in Maine. *See id.* at 194. In that case, this Court reasoned that Maine *would allow* recovery for economic loss in a case involving negligently rendered services based upon the fact that "Maine ha[d] shown a willingness to extend tort liability beyond limits it had previously set that are similar to the general rule of no recovery in negligence for purely economic loss." *Id.* at 195. The Court held that,

> While the Law Court at one point might have adopted the general rule barring recovery in negligence for purely economic loss, it seems clear that now it is more leery of such 'artificial devices.' If it were to consider the claim for damages for economic loss in the context of the negligence claim and specific fact pattern presented here, it would likely survive. Certainly, the economic loss to Plaintiffs was highly foreseeable and the possibility of widespread economic loss to other Plaintiffs is unlikely.

*Id.* at 196. After *Oceanside*, it is clear that the Law Court would indeed adopt the general rule barring recovery in negli-

---

4. Plaintiff also relies on *Lindsey v. Mitchell*, 544 A.2d 1298, 1299–1300 (Me.1988), where the Law Court allowed a plaintiff to recover for purely economic losses against an insurance company for negligent failure to file documents and for negligent misrepresentations. Again, the decision in this case was rendered before the Law Court's decision in *Oceanside* that the economic loss doctrine barred tort claims for the recovery of economic loss in Maine and there was no discussion of the economic loss doctrine and the applicability to the facts of the case. Indeed, it is not clear that the application of the economic loss doctrine was raised by the defendant in that case.

gence for purely economic loss despite its earlier decisions. It is unclear how far the Law Court will go in this direction.[5] The Law Court may determine that the economic loss doctrine does not apply to bar a tort claim for the negligent rendering of *services,* as opposed to the negligent manufacturing or selling of a product. After the Law Court's decision in *Oceanside,* explicitly adopting, contrary to this Court's prediction in *Inhabitants of Saco,* the economic loss doctrine as to some tort claims, it is not clear whether the Law Court would continue to expand the scope of the economic loss doctrine's application in Maine or rule to restrict it.

Court decisions from other states support Defendant's position that, pursuant to the majority view, the economic loss doctrine does apply to bar tort claims that services were performed negligently. For example, in *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.,* 176 Ill.2d 160, 223 Ill.Dec. 424, 679 N.E.2d 1197, 1200–01 (Ill. 1997), a case involving the same claim and the same plaintiff as in the case at bar, the Supreme Court of Illinois reaffirmed its application of the economic loss doctrine to the furnishing of services. That court explained:

> A provider of services and his client have an important interest in being able to establish the terms of their relationship prior to entering into a final agreement. The policy interest supporting the ability to comprehensively define a relationship in a service contract parallels the policy interest supporting the ability to comprehensively define a relationship in a contract for the sale of goods. It is appropriate, therefore, that [the economic loss doctrine] should apply to the service industry. Just as a seller's duties are defined by his contract with a buyer, the duties of a provider of services may be defined by the contract he enters into with his client.

When this is the case, the economic loss doctrine applies to prevent the recovery of purely economic loss in tort.

*Id.* at 1200. Thus, the Maine Law Court could follow the lead of states, such as Illinois, that apply the economic loss doctrine to cases that involve the negligent furnishing of services. *See also American Towers Owners Ass'n, Inc. v. CCI Mechanical, Inc.,* 930 P.2d 1182, 1190 (Utah 1996); *Boston Inv. Property # 1 v. E.W. Burman, Inc.,* 658 A.2d 515 (R.I.1995); *Berschauer/Phillips Const. Co. v. Seattle School District No. 1,* 124 Wash.2d 816, 881 P.2d 986 (Wash.1994); *Floor Craft Floor Covering, Inc. v. Parma Community Gen. Hosp. Ass'n,* 54 Ohio St.3d 1, 560 N.E.2d 206, 212 (Ohio 1990); *Blake Const. Co., Inc. v. Alley,* 233 Va. 31, 353 S.E.2d 724, 726 (Va.1987).

It is not clear whether the Law Court would find that claims involving negligent services are different from claims involving the negligent manufacture or sale of a defective product, and the rationale for the economic loss doctrine does not come into play. Furthermore, cases from other states cited by Defendant tend to support the position opposite of Plaintiff's. Although the cases cited by Plaintiff tend to support a conclusion that recovery of economic losses in tort cases regarding the negligent rendering of services is not barred by the economic loss doctrine, having been decided prior to *Oceanside,* they are not adequately decisive legal precedent. Thus, the Court will not make a prediction of how the Law Court would resolve the issue.

It is also not discernible how the Law Court would answer the question of whether a subsequent owner, not in privity of contract with the allegedly liable defendant, is barred from recovering under tort law for economic losses. This issue has also not been addressed by the Law Court. In *Saratoga Fishing Co. v. J.M. Martinac*

---

**5.** The Court notes its reluctance to attempt to predict the direction the Law Court will take in regard to the economic loss doctrine given

the decision in *Inhabitants of Saco* where the Court predicted incorrectly.

& Co., 520 U.S. 875, 877–78, 117 S.Ct. 1783, 1785, 138 L.Ed.2d 76 (1997), reh'g denied, 521 U.S. 1136, 118 S.Ct. 3, 138 L.Ed.2d 1037 (1997), the United States Supreme Court considered whether a secondary purchaser of a ship could bring a tort claim against the manufacturer of the hydraulic system and the company that built the vessel. Assuming that the economic loss doctrine applied to the facts at hand, the Court ultimately determined that the secondary purchaser could bring a tort claim because damage had been done to property other than the product itself. See id. at 883, 117 S.Ct. at 1788. Thus, according to the Supreme Court, the mainstream view under federal maritime law is that the economic loss doctrine applies to tort claims brought by parties other than the original purchaser. It is true that in some cases permitting a secondary owner to recover economic losses in tort would erode the law's preference of the breach of warranty claim which is likely available in such a case despite the lack of privity between the parties. See East River, 476 U.S. at 868, 106 S.Ct. at 2301 (holding that the underlying rationale for the economic loss doctrine is to preserve the breach of warranty claim because the maintenance of product value and quality is precisely the purpose of express and implied warranties); Sullivan v. Young Bros. & Co., Inc., 91 F.3d 242, 249–50 (1st Cir.1996) (holding that under Maine law a secondary purchaser would likely have a breach of warranty claim against seller of product). However, the Supreme Court did not explore whether the economic loss doctrine applies when there is no contractual relationship or available warranty claim between the defendant and the plaintiff. In the case at bar, it is not clear whether there are, in fact, contract claims available to Plaintiff and it is also not clear whether that makes a difference. Therefore, it is not discernable to the Court what path the Law Court would take in light of the policy underlying the economic loss doctrine and the specific circumstances of this case.

The foregoing demonstrates that there is no clear, controlling state-law precedent on the question of whether the economic loss doctrine applies to tort claims by secondary owners against allegedly negligent professional service providers. It is unclear whether the Law Court would or would not intend the economic loss doctrine to apply to a tort claim brought by a secondary owner against a professional designer of the product. As it is a purely legal question, there is no dispute as to material facts that must be resolved prior to answering the certified question. Furthermore, this question is certifiable to the Law Court due to its posture in the present case. The statute and the rule governing certification in the state of Maine require that the Supreme Judicial Court's answer to the proposed state-law question will, "in at least one alternative be determinative of the federal cause." See 4 M.R.S.A. § 57; M.R.Civ.P. 76B. Here, as discussed, resolution of whether the economic loss doctrine applies to the claim will, in at least one alternative, result in the dismissal of Plaintiff's negligence claim.

Because the Court is unable to predict the path of Maine law in regard to the economic loss doctrine, it will certify the following question to the Maine Supreme Judicial Court.

> In the absence of privity of contract with the architect/designer, is the subsequent purchaser of a building in Maine entitled to recover economic damages from the architect/designer which it is alleged were proximately caused by the negligence of the architect/designer?

This question is properly certified given this Court's inability to predict how it would be answered under Maine law, the lack of factual dispute, and the fact that the resolution of this question will be, in at least one alternative, determinative of the federal claim. See Boston Investment Property # 1, 658 A.2d at 515 (answering question regarding whether a subsequent purchaser may recovery tort damages

from the general contractor of a commercial office building certified by the United States District Court for the District of Rhode Island).

Accordingly, it is **ORDERED** that the question, stated above, regarding the applicability of the economic loss doctrine to this case be **CERTIFIED.** The Clerk is hereby **DIRECTED** to cause twelve (12) copies of this Order to be certified, under official seal, to the Maine Supreme Judicial Court sitting as the Law Court. It is **FURTHER ORDERED** that the Clerk of this Court be, and is hereby, authorized and directed to provide, without any cost, to the Law Court, upon written request of the Chief Justice or the Clerk thereof, copies of any and all filings of the parties herein and of the docket sheets pertaining to this case.