STATE OF MAINE

WALDO, ss.

PENDLETON YACHT YARD, INC.,

    Plaintiff

    v.

THOMAS H. H. SMITH and
MARINE DESIGN & SURVEY, INC.,

    Defendants

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-01-047

DECISION AND ORDER
ON MOTION FOR
SUMMARY JUDGMENT

MAR 24 2003

RECEIVED AND FILED
Joyce M. Page, Clerk

This matter is before the court on defendants' motion for summary judgment. In its complaint, plaintiff alleges professional malpractice of defendant Thomas H.H. Smith in count I and malpractice of defendant Marine Design & Survey, Inc. in count II. Defendant Thomas H.H. Smith is a marine surveyor and defendant Marine Design & Survey, Inc. is a Maine corporation providing survey and design services for the marine industry. This action arises out of a prepurchase survey, or inspection, of a 56-foot Landing Craft named *Sweeny* that plaintiff was considering purchasing and did, in fact, purchase. Plaintiff alleges it made the purchase on the strength of the representations by the defendant resulting from the survey or inspection.

Defendants' motion seeks summary judgment on the assertion that plaintiff's negligence claim must be dismissed because, under the circumstances of this case, there is no claim for professional negligence against a marine surveyor. The plaintiff's claim must be limited to its contract. Secondly, defendants argue that even if plaintiff's complaint could be read as asserting a claim for breach of contract, defendant Smith cannot be individually liable because he acted merely as an officer and employee of defendant corporation.

In the plaintiff's statement of material facts, it asserts that defendant Smith was hired to perform a hull bottom survey (inspection) on the vessel. Plaintiff alleges that, in addition to examining the hull bottom of the Landing Craft, defendant Smith made other representations with respect to the condition of the vessel, rendered opinions with respect to cost of repairs of the vessel, opined as to the market value of the vessel and made representations as to its condition as to be reasonably maintained. The defendants deny there was any survey, deny that the plaintiff hired defendant Smith, and argue that the defendant corporation was merely a party to a contract for limited analysis including an "audio-gauging inspection of the vessel's bottom and wind-water lines." Defendants' Reply SMF #3.

In the deposition taken by the defendants of an officer of the plaintiff, Stanley Pendleton, the plaintiff's officer testified as to the activities of defendant Smith at the time of the inspection saying,

> . . . And he looked on the inside, and he seemed to know everything about the boat. And he told me everything he saw and everything that was the matter, and how – not only how to fix it, but how much it would cost to fix it. He knew everything. I wasn't questioning that he didn't know how long he needed to look.

Deposition of Stanley Pendleton, p. 72, lines 13-19. In defendants' answers to plaintiff's first set of interrogatories, defendants answer that:

> Plaintiff's claims in this case are based upon an erroneous assumption that defendant Marine Design & Survey, Inc., was retained to conduct a full-blown prepurchase survey on the LCM-6 SWEENY. That is not the fact. Rather, plaintiff retained defendant Marine Design & Survey, Inc., to conduct a limited audio-gauging inspection of the vessel's bottom and wind-water lines.

Answers to Interrogatories, p. 9, question 10.

However, in later answers to interrogatories, in response to an inquiry as to communications between the defendant Smith and the plaintiff, the following appears:

2

Thomas Smith took a cursory look in the bilge and noted the centerline longitudinal frame was wasted and should be renewed. He also observed that several of the transverse frames, those that could be observed, had broken welds or wasted areas. Thomas Smith asked Mike McDevitt if the bow door mechanism worked; he stated that it did, and Stanley Pendelton stated that he had seen the bow door operate. Thomas Smith made three observations in the engine room: first, the wiring was household Romex type and would need to be replaced; second, there were several holes well above the water line which should be plugged; and third, the automotive type battery charger was not suited to marine use.

Stanley Pendleton pressed Thomas Smith for a cost of repairs. Thomas Smith stated he didn't know, but that to paint the vessel, including the bilges, and repair some of the items cited might cost $16,000 and probably more, but it was only a guess, and a boatyard would be able to give a better estimate.

. . . Stanley Pendleton then asked Thomas Smith what the vessel was worth and Thomas Smith stated that he had seen similar vessels listed for $35,000 to $40,000, and if the repairs discussed were made, the *Sweeny* might be worth nearer the upper limit of $45,000. Thomas H.H. Smith further advised Stanley Pendleton that the purchase price of $55,000 was too much for the LCM-6 given its age and general condition.

Answers to Interrogatories, p. 16, question 24.

Plaintiff rests its complaint on allegations of professional malpractice or professional negligence on the part of the defendants. Defendants seek a dismissal of plaintiff's complaint on the grounds that the plaintiff does not have a cause of action in tort but only a cause of action in contract. Secondly, they argue that plaintiff only had a contract with the defendant corporation and not a contract with the marine surveyor who was an employee and officer of the defendant corporation. Third, defendant argues that, as a matter of common law, plaintiff has no cause of action in tort because of the Economic Loss Doctrine.

It appears clear there are genuine issues of material facts which preclude summary judgment as to two of defendants' arguments and an issue of law to be decided by this court with respect to the Doctrine. While there is some dispute as to the scope of the agreement between the plaintiff and the defendants, there is reason to

3

believe, in the final analysis, that a jury could find that a contract existed between plaintiff and defendant corporation to conduct a study of the fitness of the hull of the vessel by its employee. However, it is also clear, even from the defendants' version of the circumstances, that defendant employee went further than a mere gauging of the vessel's hull and rendered other observations and opinions with respect to the Landing Craft. While it is disputed as to statements made, it is alleged by the plaintiff that it relied upon the expertise of the defendant employee in reaching a decision to purchase the vessel. If the observations and opinions were rendered by Mr. Smith, as a certified marine surveyor, the standard of care to which he is held must be based upon his professional qualification to the extent there is an identification of these qualifications. The court notes that defendant Smith belongs to the "Society of <u>Accredited</u> Marine Surveyors; Surveyor Associate 1995-2001" and a "<u>Certified </u>Marine Surveyor; 2001 to the present (emphasis supplied). Defendants' Answer to Plaintiff's First Set of Interrogatories No. 2, p. 2. Secondly, if the observations and opinions were rendered outside of the contract between the plaintiff and defendant corporation, they would be outside the scope of the contract and outside the scope of his employment for that particular purpose. Inasmuch as there are major factual disputes between the plaintiff and the defendants as to each of these arguments, summary judgment must fail.

However, since the defendant has raised a doctrine which they say would prohibit recovery by the plaintiff, the court analyzes its application to the present case.[1] Plaintiff had a contract with Marine Design & Survey, Inc. for work conducted by Thomas H.H. Smith, an accredited and certified marine surveyor. Defendant Smith performed the services under the contract and, it is alleged, made further observations

---

[1] The court notes the presence of plaintiff's motion to amend its complaint to add a count in contract. In the interest of judicial economy, the court analyzes the legal arguments as they may influence plaintiff's motion.

4

and rendered certain opinions. In *Adams v. Buffalo Forge Co.*, 443 A.2d 932 (Me. 1982), the Court said that a clear distinction must be drawn between actions which sound in contract and those which sound in tort. Contractual recovery is predicated in the first instance upon a consensual obligation between two or more parties. Tort recovery, on the other hand, relies upon a relationship status. The status relationship which constitutes the predicate for tort recovery is entirely independent from and, indeed, foreign to any notions of the consensual features which form the basis of contractual liability. Actions in negligence are based upon the elements that the plaintiff must prove that the defendant owed plaintiff a duty of care, that the defendant breached the duty owing to the plaintiff and the defendant's breach of the duty was the actual and legal cause of the injury suffered by the plaintiff.

> Almost every breach of contract involves actions or inactions that can be conceived of as a negligent or intentional tort. . . . if tort law and contract law are to fulfill their distinctive purposes, they must be distinguished where it is possible to do so. The Economic Loss Doctrine serves as a basis for such a distinction.

*Princess Cruises v. General Electric v. Norfolk Shipbuilding and Dry Dock Corp.*, 950 F.Supp. 151 (D.C. Vir. 1996). However, while normally a mere breach of contract is not actionable as a tort, "the circumstances surrounding the contract may give rise to an independent duty to exercise due care or similar duty in tort, in which case a breach may be actionable under both tort and contract theory." MAINE CIVIL REMEDY, Horton & McGehee, Butterworth Legal Publishers, 1991. *See also In re Blier Cedar Co.*, 7 B.R. 195, 1980 Bankr. LEXIS 4123, where the United States Bankruptcy Court for the District of Maine, in interpreting Maine law allowed a "tortious breach of a special duty arising out of the relationship between the parties which warranted the imposition of punitive damages in an otherwise purely contractual context." *See also Dermalogix Partners, Inc. v. Corwood Laboratories, Inc.*, 2000 U.S. Dist. LEXIS 8009 at *18 (D. Me.)(the United States

District Court for Maine in discussing distinction between tort and contract noted, ". . . a ground of liability in tort may coexist with a liability in contract where, independent of the contract, there is a duty which has been violated, . . .").

"The Economic Loss Doctrine is a judicially created doctrine that prohibits recovery in tort where a product has damaged only itself (i.e., has not caused personal injury or damage to other property) and, the only losses suffered are economic in nature." *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194 (Del. 1992). "The concept of duty is at the heart of the distinction drawn by the Economic Loss Doctrine." *Id.* at 1195 (*citing Lincoln Park West Condominium Assn. v. Mann*, 136 Ill. 2d 302, 555 N.E.2d 346 (1990)). "Economic loss has been defined as 'damages for inadequate value, cost of repair and replacement of the defective product, or consequent loss of profits – without any claim of personal injury or damage to other property,' as well as 'diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it is manufactured and sold.' *Id.* at 1196 (*citing Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 435 N.E.2d 443 (1982)). *Danforth* also notes, ". . . since by definition no person or other property is damaged, the resulting loss is purely economic." *Id.* at 1197.

In further consideration of the Economic Loss Doctrine as it may apply to the present circumstance, the court notes *Wendward Corp. v. Group Design, Inc.*, 428 A.2d 57 (Me. 1981). In this action by an owner against an engineering and soil analysis company, the Maine Law Court affirmed judgment against the architect and subcontractor for "negligence in the performance of a construction contract." The losses were economic in that the plaintiff was required to reconstruct a foundation based upon negligence in the performance under a contract by the defendant.

6

The Maine Supreme Judicial Court has unequivocally adopted the Economic Loss Doctrine in the matter *Oceanside at Pine Point Condominium Owners Assn. v. Peachtree Doors*, 659 A.2d 267 (Me. 1995). In this action brought under both contract and negligence theories, the court adopts the majority view that some property damage or personal injury must be found in order to recover for economic loss and the courts do not permit tort recovery for defective products damaged to itself.

While all the cases cited refer to the failure of product itself or injury or damage to other property or persons, the defendant argues that it is more likely than not that the Maine Law Court would identify the Economic Loss Doctrine as applicable to service contracts. In support of that position, the defendant cites *Bayreuther v. Gardner*, 2000 Me. Super. LEXIS 140, Cumberland Cty.; Mills, J. (June 21, 2000). The case addresses design of a septic system; the court holds in a single sentence that "the plaintiff's negligence claim is barred by the Economic Loss Doctrine." *Id. (citing Firemen's Fund Ins. Co. v. S.E.C. Donohue, Inc.*, 176 Ill.2d 160, 679 N.E.2d 1197 (1997); *Wendward Corp. v. Group Design, Inc.*, 428 A.2d 57 (Me. 1981)). Defendant also cites *L.L. Bean v. United States Mineral Products Co.*, 1999 Me. Super. LEXIS 323, Cumberland Cty.; Crowley, J. (December 3, 1999)(*citing Fireman's Fund Ins. Co. v. Childs*, 52 F.Supp.2d 139 (D.C. Me. 1999)(the court applied the Economic Loss Doctrine for an architectural and structural design)).

This court declines to reach the same conclusion for two reasons. First, there is a genuine issue as to whether there was any contract between the plaintiff and defendant Smith at the time the defendant made the observations and rendered the opinions complained of. Secondly, the court believes that the better view is found in *International Ore & Fertilizer Corp. v. SGS Control Services, Inc.*, 743 F.Supp. 250 (D.C. N.Y. 1990). This case, similar in facts to those before us involved an inspection by a marine inspection

7

company of the holds of a cargo ship involving the inspection of the stringers and overhead beams in a cargo hold. The Court held that the plaintiff, Fertilizer Corp., should not recover compensatory damages on the contract and could not generally be held liable under a negligence theory, but it could find the inspection company liable for negligent misrepresentation. In that case, the inspector did not see what the plaintiffs alleged he should have seen based upon his knowledge and experience and the standards of the marine inspection industry.[2] Negligent misrepresentation is a tort, is a form of negligence, and is defined as a "careless or inadvertent false statement in circumstances where care should have been taken." BLACK'S LAW DICTIONARY, 7th ed. (1999). "When the duty of one person to another exists solely by virtue of a negotiated agreement, the relationship is normally governed only by the law of contract. Accordingly, a violation of that duty does not ordinarily give rise to a remedy in tort. Nevertheless, if the conduct of one party would constitute a tort in the absence of the contract, then that cause of action is not extinguished simply because some aspects of the relationship between the parties happen also to be governed by a independent agreement." *International Ore & Fertilizer Corp.*, 743 F.Supp. at 258 *(citing Eaves Brooks Costume Co., Inc. v. Y.B.H. Realty Corp. et al,* 76 N.Y.2d 220, 556 N.E.2d 1093, 552 N.Y.S.2d 286 (1990) (plaintiff may properly bring an action in tort when defendant had assumed a duty to exercise reasonable care to prevent foreseeable harm to plaintiff)).

The court believes that analysis should be applied in the instant case. Considering the evidence in a light most favorable to the nonmoving party, the court is satisfied that the conduct of the defendant Smith in examining the fitness of the hull

---

[2] The court's denial of recovery under the contract theory was based upon a disparity between the contract price and the damages incurred. "Nevertheless, that consideration does not apply to the analysis of defendant's duties under independent tort law." *International Fertilizer v. SCS Control Services,* 743 F.Supp. at 258.

8

under plaintiff's contract with defendant Marine Design & Survey, Inc. would be governed by the professional negligence standard within the marine survey industry as dictated by the accreditation and certifications held by defendant Smith. Conduct by defendant Smith outside the scope of the contract, if proven to be negligently misrepresented to the damage of plaintiff, would give rise to an action in tort notwithstanding the Economic Loss Doctrine.

For the reasons heretofore discussed, the entry will be:

The defendants' motion for summary judgment is DENIED.

Dated: March 20, 2003

Donald H. Marden
Justice, Superior Court

9