**OCEANSIDE AT PINE POINT CONDOMINIUM OWNERS ASSOCIATION, et al.**

v.

**PEACHTREE DOORS, INC.**

Supreme Judicial Court of Maine.

Argued Feb. 27, 1995.

Decided May 26, 1995.

David R. Ordway (orally), Ordway & Associates, Biddeford, for plaintiff.

Richard L. Suter (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for defendants.

Before ROBERTS and GLASSMAN, CLIFFORD, RUDMAN, and LIPEZ, JJ.

CLIFFORD, Justice.

Plaintiffs Oceanside at Pine Point Condominium Owners Association, Bruce Bornstein, and Nancy Spencer, appeal from summary judgments entered in the Superior Court (York County) in favor of the defendant, Peachtree Doors, Inc. The plaintiffs contend that the court erred in determining that (1) their claims for product liability and negligence seek damages not recoverable in tort, (2) they failed to bring their warranty claim within the statute of limitations, and (3) their failure to comply with the notice requirements of the Unfair Trade Practices Act (UTPA) bars those claims. Finding merit only in the contention of plaintiffs that summary judgment was improperly entered on their claim pursuant to the UTPA, we affirm the Superior Court on all counts except that dealing with the UTPA.

Cimino Construction Company (Cimino), a general contractor, completed the Oceanside at Pine Point Condominium located in Old Orchard Beach on June 25, 1986. Cimino installed windows and doors manufactured by Peachtree in the building. As of August 22, 1989, significant water damage to the building had occurred around the windows. Peachtree was made aware of the problem in late 1989. After reviewing reports from Thompson & Lichtner, a weatherproofing company that inspected the buildings, Peachtree informed Cimino that it was "confident that in no way should it be concluded ...

that the windows are the cause of the water damage that has occurred on the project." Cimino sent a second letter dated January 24, 1990 to Peachtree demanding that Peachtree take steps to correct the problem with the windows.[1]

On December 31, 1991, the plaintiffs brought a class action suit against Peachtree on behalf of all the owners of the condominium units. The complaint alleged claims for breach of contract (Count I), breach of implied warranty (Count II), negligence (Count III), negligent misrepresentation (Count IV), unfair trade practices (Count V), and product liability (Count VI). Peachtree filed a third-party complaint against Cimino.

Pursuant to M.R.Civ.P. 56, Peachtree moved for a partial summary judgment on Counts I, II, V, and VI. Following a hearing, the court (*Crowley, J.*) granted Peachtree's motion.[2] Peachtree subsequently moved for a second partial summary judgment on Counts III and IV, which also was granted by the court (*Wathen, C.J.*). This appeal followed.

■ We review the grant of a summary judgment for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered. *Cushman v. Tilton*, 652 A.2d 650, 651 (Me.

1995). After independently reviewing the record, we "will affirm a summary judgment when there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." *Smith v. School Admin. Dist. No. 58*, 582 A.2d 247, 248 (Me.1990); *Cushman*, 652 A.2d at 651.

## I.

In granting summary judgments to Peachtree on the counts alleging negligence, negligent misrepresentation, and product liability, the trial court determined that (1) a claim for damages caused by a defective product to itself is a claim for economic loss not recoverable in tort, and (2) building products lose their identity as separate products once incorporated into real estate and that damage caused by such an incorporated product to the building constitutes damage to the product itself. The plaintiffs contend that the trial court erred in concluding that a building product incorporated into the structure of a building sold as a completed unit is not a separate product for product liability purposes.

■ A lawsuit alleging damage or injury from a faulty or defective product may be based on a number of theories, including, *inter alia*, strict liability,[3] negligence, negli-

1. The letter, addressed to Peachtree's Vice President of Products, stated, in pertinent part:

Therefore I must insist that you take whatever action is necessary to bring your windows into compliance with the appropriate design standards and repair the damage that has been done by these leaks.

Time is of the essence. Every day that goes by without a resolution of this problem can only, I fear, result in further damage to the exterior of the wall system. Would you, therefore, please let me know promptly what your intentions are in regard to this matter so that I can inform our patient owners as to what they can expect from Peachtree.

2. The plaintiffs do not challenge the summary judgment entered on the breach of contract claim.

3. Maine has permitted recovery on this theory since 1973, when it enacted 14 M.R.S.A. § 221 (1980). The statute, based on section 402A of the *Restatement (Second) of Torts* (1965), provides

One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is

subject to liability for physical harm thereby caused to a person whom the manufacturer, seller, or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Strict product liability in tort developed as a theory to allow plaintiffs injured by defects in manufactured products to avoid the bars to recovery present in other tort actions. J.M. Zitter, Annotation, *Strict Products Liability: Recovery for Damage to Product Alone*, 72 A.L.R. 4th 12, 15 (1989); *see also Restatement (Second) of Torts* § 402A cmt. b, c. It stems from "policy considerations that manufacturers, sellers and suppliers have a duty not to place defective, unreasonably dangerous products into the stream of commerce and that those who do so should be held responsible for injuries which thereafter occur as a

gent misrepresentation, and breach of warranty. 63 Am.Jur.2d *Products Liability* §§ 4–5 (1984). Under tort theories, recovery is permitted for personal injuries and physical damage to property other than the defective product. *See, e.g., Walker v. General Elec. Co.*, 968 F.2d 116 (1st Cir.1992) (strict liability claim permitted for damages for fire-destroyed residence resulting from alleged toaster malfunction); 63 Am.Jur.2d § 563 (strict liability theory). In addition, when personal injuries or damage to other property occur, some courts have allowed recovery for the repairs or loss of the defective product itself. J.M. Zitter, Annotation, *Strict Products Liability: Recovery for Damage to Product Alone*, 72 A.L.R. 4th 12, 15 (1989); 63 Am.Jur.2d § 564 (strict liability theory).

■ Courts generally, however, do not permit tort recovery for a defective product's damage to itself.[4] *See* 63 Am.Jur.2d § 564; *see also Jones & Laughlin Steel Corp. v. Johns–Manville Sales Corp.*, 626 F.2d 280, 287 n. 13 (3d Cir.1980) (citing cases holding economic losses not recoverable in tort); Zitter, 72 A.L.R. 4th at 21 (citing cases from twenty-seven states); 63A Am.Jur.2d § 970 (majority of jurisdictions require some property damage or personal injury in order to recover for economic loss). *But see* Zitter, 72 A.L.R. 4th at 18 (citing cases from ten states permitting tort recovery for damage to a defective product itself). Although we have not previously addressed this issue, *see Sylvain v. Masonite Corp.*, 471 A.2d 1039,

1041 (Me.1984) (declining to address whether recovery under strict liability "requires damage other than to the defective product itself" when general verdict was justified on breach of implied warranty of merchantability claim), we agree with the majority approach.

The rationale underlying this rule is that damage to a product itself "means simply that the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.' The maintenance of product value and quality is precisely the purpose of express and implied warranties." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872, 106 S.Ct. 2295, 2302–03, 90 L.Ed.2d 865 (1986) (citation omitted). A situation where the injury suffered is merely the "failure of the product to function properly," *id.* at 868, 106 S.Ct. at 2300, is distinguishable from those situations, traditionally within the purview of tort, where "the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property."[5] Zitter, 72 A.L.R. 4th at 16; *see East River*, 476 U.S. at 875–76, 106 S.Ct. at 2304 (tort theories of recovery against turbine designer/manufacturer were held unavailable to plaintiffs seeking repair costs and income lost while supertankers were out of service as a result of damage caused to turbine by defective steam reversing rings because losses were purely economic).[6]

result." *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 941 (Me.1982).

**4.** This rule is referred to as the economic loss doctrine. *See Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del.1992). Economic loss has been defined as " 'damages for inadequate value, costs of repair and replacement of defective product, or consequent loss of profits—without any claim of personal injury or damage to other property.' " *Moorman Mfg. Co. v. National Tank Co.* 435 N.E.2d 443, 449 (Ill.1982) (citation omitted).

**5.** The Supreme Court has described the distinction between tort and contract as resting "on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products." When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.

... When a person is injured, the "cost of an injury and the loss of time or health may be an overwhelming misfortune," and one the person is not prepared to meet. In contrast, when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service. Losses like these can be insured. Society need not presume that a customer needs special protection. The increased cost to the public that would result from holding a manufacturer liable in tort for injury to the product itself is not justified.
*East River*, 476 U.S. at 871–72, 106 S.Ct. at 2302 (citations omitted).

**6.** The Supreme Court explicitly rejected the minority approach, which (1) finds it arbitrary to allow recovery for economic losses if a "plaintiff suffers bodily injury or property damage, but not

Whether a product has injured only itself may, of course, be a difficult question to answer. We follow the approach taken by those courts when considering facts analogous to those before us, and look to the product purchased by the plaintiff, as opposed to the product sold by the defendant, to determine whether a product has injured only itself. *See, e.g., Easling v. Glen–Gery Corp.,* 804 F.Supp. 585, 590 (D.N.J.1992) (no recovery permitted under strict liability theory for building damage caused by defective bricks because plaintiffs purchased completed apartment complex and not a load of bricks); *Casa Clara Condominium Ass'n, Inc. v. Charley Toppino & Sons, Inc.,* 620 So.2d 1244, 1247 (Fla.1993) (rejecting homeowners' argument that damages caused to a condominium by defective concrete was damage to other property because plaintiffs purchased finished homes, not component parts); *cf. King v. Hilton–Davis,* 855 F.2d 1047, 1051 (3d Cir.1988) (look to product (treated seed potatoes) purchased by plaintiff, rather than product (chemical) sold by defendant), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 839, 102 L.Ed.2d 971 (1989); *Shipco 2295, Inc. v. Avondale Shipyards, Inc.,* 825 F.2d 925, 930 (5th Cir.1987) (in context of tort claim for economic loss, product means the finished product bargained for by buyer, rather than individual component parts of that product), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 701 (1988); *American Home Assurance Co. v. Major Tool & Mach., Inc.,* 767 F.2d 446, 447–48 (8th Cir.1985) (turbine assembler could not recover in tort from manufacturer of defective component parts because damage from those defective parts to

remainder of turbine was not damage to other property).[7]

The plaintiffs here purchased finished condominium units, not individual components of the units. Because the windows were integrated into the finished product purchased by the plaintiffs, the damages caused by any defects in the windows constituted damage only to the product itself, not damage to "other property." *Washington Courte Condominium Ass'n–Four v. Washington–Golf Corp.,* 150 Ill.App.3d 681, 103 Ill.Dec. 752, 755–56, 501 N.E.2d 1290, 1293–94 (1986) (water damage to insulation, walls, and electrical outlets caused by defective windows and exterior sliding glass doors was not damage to other property but merely consequential economic loss not recoverable in tort).

Plaintiffs' claims for economic damages—"the costs of all repairs, renovation, corrections and replacements related to the Defendant's defective performance of its contract"—are properly addressable under a warranty theory. The trial court correctly determined that the plaintiffs may not recover for these damages in tort and its grant of a summary judgment on this basis did not constitute an error of law.

**II.**

The court concluded that the plaintiffs' warranty claim is barred because the four-year statute of limitations applicable to warranties had run prior to this suit being filed.

The complaint, stating that an "implied term of the Defendant's contract to provide windows and doors for the condominium

if a product injures itself," *East River,* 476 U.S. at 869, 106 S.Ct. at 2301; (2) finds "no inherent difference between economic loss and personal injury or property damage, because all are proximately caused by the defendant's conduct," *id.;* and (3) finds that a "manufacturer can predict and insure against product failure," *id.,* for failing "to account for the need to keep products liability and contract law in separate spheres and to maintain a realistic limitation on damages." *Id.* at 870–71, 106 S.Ct. at 2302; *see also Spring Motors Distribs., Inc. v. Ford Motor Co.,* 98 N.J. 555, 489 A.2d 660, 672 (1985), limiting *Santor v. A & M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305, 312 (1965) (establishing minority rule that ultimate consumer may recover in strict liability

for direct economic loss), to noncommercial contexts.

7. Although some courts have permitted recovery for damage to buildings under a theory of strict liability, we note that most of those cases involved claims against the builder or contractor, and allowed recovery using the rationale that a building is a "product" within the meaning of the doctrine. *See* Annotation, *Recovery, Under Strict Liability in Tort, for Injury or Damage Caused by Defects in Building or Land,* 25 A.L.R. 4th 351 (1983) (discussing the circumstances in which the doctrine of strict liability in tort has been extended to allow recovery for damages caused by defects in buildings or land).

building was that the products so provided would be merchantable and fit for the purposes for which they were intended," plainly asserts a breach of warranty claim against Peachtree pursuant to 11 M.R.S.A. § 2–314 (1995).[8]

■ The statute of limitations applying to most breach of warranty claims is four years from the date of accrual, which occurs "when tender of delivery is made." *Id.* § 2–725(2). In those instances, however, when the cause of action is for "personal injuries," the action accrues when "the injury takes place," *id.*, and is governed by the six-year statute of limitations period provided in 14 M.R.S.A. § 752 (1980). The plaintiffs contend that the six-year statute of limitations period applies because the damage to the building constitutes a "personal injury" within the meaning of section 2–725(2).[9]

■ The complaint alleges property damage, not personal injuries. It states that the plaintiffs have suffered "substantial damage to both the interior and exterior of the said building which has required, and will in the future require, extensive repairs, renovations, corrections and replacements to both the interior and exterior of the building." While personal injury is undefined in section 2–725(2), the plaintiffs have not provided any authority for the proposition that property damage is the equivalent of personal injury.[10] Furthermore, the two terms have been distinguished elsewhere. *See, e.g.,* 14 M.R.S.A. §§ 162, 163 (1980) (provisions refer to both personal injury and property damage); *Taylor v. Hill,* 464 A.2d 938, 945 (Me.1983) ("In common legal parlance ... the term 'personal injury claim' is often used in a sense that excludes damage to property...."); *see also Ouellette v. Sturm, Ruger & Co.,* 466 A.2d 478, 480, 482–83 (Me.1983) (permanent disablement resulting from misfiring gun was personal injury under section 2–725).

■ Because the plaintiffs did not suffer a personal injury, the four-year statute of limitations applies to the plaintiffs' breach of warranty claim. The cause of action accrued either when the windows were delivered in December 1985, or when the project was completed in June 1986. Accordingly, the claim expired prior to the institution of this lawsuit in December 1991, and the summary judgment claim on this count was properly entered.

### III.

The court granted summary judgment to Peachtree on the plaintiffs' claims under the Unfair Trade Practices Act (UTPA), 5 M.R.S.A. §§ 205–A to 214 (1989 & Supp. 1994), for the failure to comply with the notice provision set out in section 213(1–A). The plaintiffs contend that the January 24, 1990 letter [11] from Cimino to Peachtree satisfied the notice requirement, and, even if the letter does not constitute sufficient notice, the failure to comply does not bar a claim brought pursuant to the UTPA.

Section 213(1–A) of the UTPA states in pertinent part:

> **Settlement offer.** At least 30 days prior to the filing of an action for damages, a written demand for relief, identifying the claimant and reasonably describing the unfair and deceptive act or practice relied upon and the injuries suffered, must be mailed or delivered to any prospective re-

---

8. Section 2–314 provides in pertinent part:

    (1) Unless excluded or modified by section 2–316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind....
    (2) Goods to be merchantable must at least be such as
        . . . .
        (c) Are fit for the ordinary purpose for which such goods are used.

9. 11 M.R.S.A. § 2–725(2) provides in pertinent part:

    A cause of action for personal injuries arising under this Article for breach of warranty occurs when the injury takes place and is governed by the limitation of action period under Title 14, section 752.

10. The plaintiffs' argument focuses primarily on strict liability and that property damage is recoverable under that theory. Although property damages, among other damages, may be recovered in a personal injury case, a claim limited solely to property damage is not the equivalent of a personal injury claim.

11. *See supra* note 1.

spondent at the respondent's last known address....

The demand requirement of this subsection does not apply if the claim is asserted by way of counterclaim or cross claim.

5 M.R.S.A. § 213(1–A) (Supp.1994).

■ On its face, the letter does not comply with requirements stated in section 213(1–A). The letter was not written by the plaintiffs and does not make a demand for monetary relief. Moreover, even if the plaintiffs were identified as claimants, and the statement insisting "that you [Peachtree] take whatever action is necessary to bring [the] windows into compliance with the appropriate design standards and repair the damage that has been done by these leaks" could be said to be a demand for relief, the letter does not identify any unfair trade practices or deceptive acts. *See Suminski v. Maine Appliance Warehouse, Inc.*, 602 A.2d 1173, 1174 (Me. 1992) (violation of UTPA requires unfair or deceptive conduct, not merely failure to honor statutory warranties).

■ Section 213(1–A), however, does not provide a remedy for noncompliance. Although we have not had occasion to address this particular provision, we have construed other statutory notice provisions. The medical malpractice statute also contains a notice requirement without providing a remedy for noncompliance. 24 M.R.S.A. § 2903 (1990 & Supp.1994). We have concluded that the failure of a plaintiff to comply with section 2903 is not jurisdictional, but is an affirmative defense. *Dougherty v. Oliviero*, 427 A.2d 487, 489 (Me.1981). Despite proof of a plaintiffs' noncompliance, the statute does not require a dismissal if the action is commenced within the statute of limitations period. *Id.* at 490. Rather, we concluded that the purposes of the Maine Health Security Act (settlement without litigation) could be accomplished by imposing a ninety-day period during which the litigation cannot proceed. *Id.*

■ The Maine Tort Claims Act, on the other hand, contains language making timely notification of the governmental entity a pre-requisite to maintaining a tort claim against it or its employees. 14 M.R.S.A. § 8107(1) (Supp.1994). Failure to comply, absent good cause, bars the suit. *Cushman,* 652 A.2d at 651; *Bruno v. City of Lewiston,* 570 A.2d 1221, 1222 (Me.1990).

■ Section 213(1–A), like section 2903, is designed to encourage settlement by notifying the defendant of the claim within a certain amount of time prior to the initiation of the suit. A defendant may make a tender of settlement in response to the notice and demand for relief. If the plaintiff rejects such tender and prevails in court, attorney fees and costs otherwise recoverable become unavailable if the judgment recovered is less favorable than the rejected settlement offer. Disallowing attorney fees and costs would be one remedy consistent with the section's purpose.

In the absence of explicit terms regarding noncompliance, we conclude that the notice requirements of section 213(1–A) are not jurisdictional and do not operate in this case to preclude the plaintiffs from maintaining their UTPA claim against Peachtree. Summary judgment on this basis was improperly entered as to Count V.[12]

The entry is:

Judgment affirmed as to Counts I, II, III, IV, and VI. Judgment vacated as to Count V. Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

12. The allegations contained in the complaint may be sufficient to state a claim under the UTPA. Our decision does not preclude a subse-quent summary judgment challenge on remand on grounds other than failure to comply with the notice requirements.