STATE OF MAINE                              SUPERIOR COURT
YORK, ss.                                   Civil Action
                                            Docket No. CV-15-0084


JOHN C. BANNON, Trustee for
THE CAPTAIN'S WATCH
NOMINEE TRUST,

            Plaintiff,
                                            ORDER DENYING MOTION
    v.                                      FOR SUMMARY JUDGMENT

ATLANTIC COMFORT SYSTEMS,
INC.,

            Defendant.

Plaintiff John C. Bannon, in his capacity as trustee for The Captain's Watch Nominee Trust ("Trust"), brings this action against Defendant Atlantic Comfort Systems, Inc. ("ACS") seeking compensation for damages to wooden floors, trim, and furniture in a residence resulting from a nonfunctioning humidification system. The complaint alleges breach of contract, negligence, and negligent misrepresentation. Before the court is ACS's motion for summary judgment. For the reasons that follow, the motion is denied.

## I. Summary Judgment Factual Record

In 1990 Diane and Dick Rubin built a house at 8 Peradventure Way in York Harbor, Maine. (Pl.'s S.M.F. ¶ 27.) The house has an HVAC system that includes "a built-in whole-house humidifier." (*Id.* ¶ 31.) The humidifier was integrated into the mechanical system of the house. (Def.'s S.M.F. ¶ 4.) The humidifier uses a canister to create steam. (Pl.'s S.M.F. ¶¶ 33.) The canister needs periodic replacement. (*Id.* ¶ 34.)

1

In years prior to 2005, the Rubins had a yearly service maintenance contract with ACS in years to maintain the HVAC system. (Def.'s S.M.F. ¶ 6.) After 2005, there was no annual service maintenance contract between the parties. (See *Id.* ¶ 7; Pl.'s Opp. S.M.F. ¶ 7, 36; Def.'s Reply S.M.F. ¶ 36.)

In 2009, the Rubins transferred ownership of the house to the Trust. (*Id.* ¶ 29.) The Rubins are beneficiaries of the Trust, and continue to live in the house. (*Id.* ¶¶ 26, 30.) The same integrated humidifier system was still in place in the house at the time the ownership was transferred to the Trust. (Def.'s S.M.F. ¶ 5.)

After 2009, it is Plaintiff's position that the Rubins acted as agents of the Trust in dealing with ACS. (See Pl.'s S.M.F. ¶ 37.) ACS concedes that it provided services after 2009, but contends the services were provided upon request to the Rubins, and on a "time and materials" basis. (Def.'s S.M.F. ¶¶ 10-11.) The Trust asserts that the Rubins, on its behalf, asked ACS to continue to take care of the residence's "systems," and continued to enter into contracts for services of the HVAC system. (Pl.'s Opp. S.M.F. ¶ 7, 8.) ACS has never billed the Trust directly for any services performed. (See Def.'s S.M.F. ¶ 12.)

On May 14, 2013, ACS performed service to the HVAC system at the request of the Rubins. (Def.'s S.M.F. ¶ 13-14.) An ACS service technician removed the humidifier canister, and wrote on the service slip: "Need to order new canister for [the] humidifier and bring it in the fall for Heating Service." (Pl.'s S.M.F. ¶ 50.) ACS did not follow up with the Rubins about the removed canister or need for a new canister. (*Id.* ¶¶ 55, 58.) During the fall and winter of 2013, neither the Rubins nor any representative of the Trust requested preventative maintenance or service for the HVAC system. (Def.'s S.M.F. ¶ 15.)

2

In December 2013, ACS installed a new heating furnace in a separate part of the house. (Def.'s S.M.F. ¶ 16.) The new furnace was integrated into a different HVAC system in the house separate from the system of which the humidifier was a part. (*Id.* ¶ 17.) After May 2013, ACS did not service any systems at the residence until January 2014 when the Rubins requested service of the humidifier. (*Id.* ¶ 18.) ACS ordered a new humidifier canister after the Rubins requested service, but it took weeks to arrive, as it had to be shipped from overseas. (*Id.* ¶ 19.)

ACS installed the new canister when it arrived, but as of February 18, 2014 the humidifier was still not properly working. (*Id.* ¶ 20.) On March 4, 2014, ACS serviced the humidifier at the request of the Rubins and found that a faulty circuit board was causing the humidifier not to function properly. (*Id.* ¶21.) ACS replaced the circuit board for the humidifier on March 26, 2014. (*Id.* ¶ 22.)

The wooden floors, trim, and staircase shrank and split due to the lack of humidification during the winter of 2013 through 2014. (Pl.'s S.M.F. ¶¶ 68, 70, 76.) The Trust asserts the cost to repair the damage to the wooden features was estimated to be $101,014.90. (*Id.* ¶ 77.) The only damage estimate provided by the Trust to ACS was for $71,000. (Def.'s Reply S.M.F. ¶ 77.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is proper where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169; *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653; M.R. Civ. P. 56(c). A material fact is "one that can affect the outcome of the case." *Dyer v. DOT*, 2008 ME 106, ¶ 14, 951 A.2d 821. A genuine issue is raised when sufficient evidence requires a fact-finder to "choose between competing versions

3

of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504). When material facts are in dispute, the dispute must be resolved through fact-finding at trial. *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18. A party seeking to avoid summary judgment must present a *prima facie* case for the claim or defense that is asserted. *See Reliance Nat'l Indem. V. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220; *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 9, 824 A.2d 48.

## B. Breach of Contract Claim

A contract exists if "the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." *Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625). "The intent of the parties in entering a contract, whether a contract exists, and whether a breach has occurred are all questions of fact." *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041. To survive summary judgment the Trust must "present the evidence from which a fact-finder could conclude that a contract was formed." *McClare v. Rocha*, 2014 ME 4, ¶ 17, 86 A.3d 22.

The Trust maintains that ACS assented to a contract on May 14, 2013 when it serviced the humidifier at Mr. Rubin's request. It further contends the contract was to shut down the humidifier for the summer, with an implied term that ACS would complete the necessary work at an acceptable standard. The Trust argues removing the canister was a breach of the contract to service the humidifier on May 14, 2013 because it rendered the humidifier nonfunctional. ACS does not dispute that it agreed to provide service, and did provide service, on that day to shutdown the humidifier for the summer. However, ACS disputes that there was an agreement to continue

4

providing services under an ongoing maintenance contract such as had existed in the past.

Plaintiff has presented a *prima facie* case for breach of contract. There are disputed material facts as to the existence of a contract and its terms. Summary judgment must be denied as to Plaintiff's contract claim.[1]

## C. Negligence Claims

ACS contends that because this case is fundamentally a breach of contract action, Plaintiff's resort to the tort claim of negligence (Count 2) is improper and it should be granted summary judgment with respect to Plaintiff's negligence claims for any one of the following reasons: (1) an award of damages in tort is barred by the doctrine of economic loss; (2) ACS has no duty in tort to Plaintiff as a matter of law; and/or (3) expert testimony is required to establish a standard of care, and Plaintiff has not identified an expert. ACS also contends that the claim of negligent misrepresentation (Count 3) is improper, and is essentially a contract claim in disguise.

### 1. Economic Loss Doctrine

The economic loss doctrine grew out of product liability cases, and bars recovery in tort "for a defective product's damage to itself."[2] *Oceanside at Pine Point Condominium Owners Ass'n v. Peachtree Doors*, 659 A.2d 267, 270 (Me. 1995). ACS cites *Oceanside* in support of its contention that Plaintiff cannot recover under a tort theory

---

[1] ACS admits for the purpose of summary judgment that after the residence was transferred to the Trust "the Rubins were acting on behalf of and as agents for the Trust when they hired Atlantic Comfort." (Def.'s Reply to Pl.'s Add. S.M.F. ¶ 37.) In Maine, an "undisclosed principal [may] sue upon a contract made in the name of her agent." *Kingsley v. Siebrecht*, 92 Me. 23, 28 (Me. 1898). The Rubins, as trustees, may bring these claims on behalf of the Trust.

[2] "Economic loss has been defined as 'damages for inadequate value, costs of repair and replacement of defective product, or consequent loss of profits –without any claim of personal injury or damage to other property.'" *Oceanside*, 659 A. 270 n. 4 (quoting *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443, 449, 61 Ill. Dec. 746 (Ill. 1982)).

for property damage to the house caused by the defective humidifier because the HVAC system is part of the house itself.

*Oceanside* is distinguishable from this case. There, the "product" purchased was a new condominium unit, of which defective windows were an "integrated part;" thus, wall damage resulting from the window defects was damage to the unit purchased by the buyer. *Oceanside*, 659 A.2d 269-70. In this case, Plaintiff did not purchase a product at all, but rather had procured Defendant's time and expertise to service a component of a pre-existing HVAC system.[3] The damages for which recovery is now sought occurred not to the HVAC unit for which service was procured, but to other parts of the house allegedly as a result of the deficient service.

Therefore, the court concludes that the economic loss doctrine should not bar recovery of damages in tort in this case.

## 2. Duty of Care

ACS argues that as a matter of law it owed no duty of care to the Trust because contract duties do not give rise to tort duties. The Trust argues ACS had a tort duty of care, independent of any contract duty, to use due care and follow proper procedures in servicing the humidifier.

The existence of a duty is a question of law. *McPherson v. McPherson*, 1998 ME 141, ¶ 8, 712 A.2d 1043. The Restatement (Second) of Torts § 299A (1965) provides: "One who undertakes to render services in the practice of a . . . trade is required to

---

[3] The Law Court has not addressed directly the applicability of the economic loss doctrine in the context of trade service contracts. Superior Courts have arrived at different conclusions. *Compare 415 Cong. St. Props. v. Urs Group*, No. BCD-CV-11-032011 Me. Super. LEXIS 228, * 23-24 (Nov. 10, 2011) (Noting in *dicta* that economic loss doctrine may not preclude tort recovery for physical damages undetected by defective inspection) *with Maine-ly Marine Sales and Serv., Inc. v. Worrey*, No. CV-04-369, 2006 Me. Super. LEXIS 79, *6-7 (Apr 10, 2006) (Economic loss doctrine precludes damages resulting from deficient services under winterization contract).

6

exercise the skill and knowledge normally possessed by members of that . . . trade in good standing in similar communities." The Law Court has favorably cited section 299A regarding the duty owed by professionals, *Rowe v. Bennett*, 514 A.2d 802, 804 (Me. 1986). *See also Caleb Affordable Hous. Assocs., L.P. v. N. Utils.*, No. CV-00-044, 2001 Me. Super. LEXIS 185 (Jun. 27, 2001) (quoting rule in section 299A); *Smith v. Grant's Trailer Sales*, No. CV-95-123, 1998 Me. Super. LEXIS 75, * 19 (Mar. 24, 1998) (citing section 299A and stating "members of profession or trade are 'required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities'").

The court concludes that section 299A Restatement (Second) of Torts establishes a basis for legal duty in these circumstances.

### 3. Expert Testimony

ACS argues that this case involves a claim against a construction or trade professional, and therefore expert testimony is required to establish the appropriate standard of care and legal duty of the contractor. *See Maravell v. R.J. Grondin & Sons*, 2007 ME 1, ¶ 11, 914 A.2d 709. Expert testimony is required where a matter in issue is "within the knowledge of experts only, and not within the common knowledge of lay [persons]." *Id.* (quoting *Cyr v. Giesen*, 150 Me. 248, 252, 108 A.2d 316, 318 (1954)). Expert testimony is not necessary, however, "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 10, 695 A.2d 1206; *Cyr*, 150 Me. at 252, 108 A.2d at 318.

Here, it is alleged that ACS was called to service the HVAC system and humidifier in May 2013 and shut it down for the season. It is further alleged that in performing that work, the ACS representative removed a key component, rendering the humidifier inoperable, and failed to replace it or inform the Rubins. This falls

7

sufficiently within the sphere of common knowledge so as not to require an expert witness to explain the standard of care that a HVAC servicer would owe in these circumstances. *Id.*

### 4. Negligent Misrepresentation

Maine has adopted Restatement (Second) of Torts § 552 as a standard for negligent misrepresentation claims. Section 552 provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information, for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Binette v. Dyer Library Ass'n*, 688 A.2d 898, 903 (Me. 1996) (quoting Restatement (Second) of Torts § 552(1) (1977)). This is a distinct cause of action in tort that lies independent of a breach of contract action.

ACS contends that, in fact, it did not provide false information to the Trust but rather correctly informed the Trust of additional service needed though the service invoice on May 14, 2013 that stated, "Need to order new canister for [the] humidifier and bring it in the fall for Heating Service." (Def.'s Rep. Pl.'s Opp. M.S.J. at 8). Plaintiff, on the other hand, asserts that ACS did supply it false information, namely that the humidifier would be ready to use during the winter of 2013 and 2014; that this information was for the guidance of the Trust in maintaining the residence; its reliance on this information was justifiable and resulted in property damages; and ACS failed to communicate the need for further action to ensure the humidifier was ready. (Pl.'s Opp. M.S.J. at 15-16.)

8

There is a genuine issue of material fact at least as to the meaning of the May 14, 2013 invoice, and whether it constituted "reasonable care or competence in obtaining or communicating the information" that the canister needed to be replaced. This is a question of fact not properly decided on a motion for summary judgment. *Binette*, 688 A.2d at 904.

### III. Conclusion and Order

Accordingly, the court concludes that Plaintiff has presented a *prima facie* case for the contract and tort claims alleged, and that there are genuine issues of material fact in dispute so as to preclude summary judgment on any of the three counts in the complaint.

Therefore, the entry shall be:

Defendant's motion for summary judgment is DENIED.

SO ORDERED.

DATE: April 19, 2017

ENTERED ON THE DOCKET ON: 4/20/2017

Wayne R. Douglas
Justice, Maine Superior Court

9

CV-15-081

ATTORNEY FOR PLAINTIFF:
KELLY MCDONALD ESQ
MURRAY PLUMB & MURRAY
75 PEARL ST, P O BOX 9785
PORTLAND ME  04104-5085

ATTORNEY FOR DEFENDANT:
THOMAS MARJERISON
NORMAN HANSON & DETROY LLC
PO BOX 4600
PORTLAND ME  04112