STATE OF MAINE
YORK, ss.

SUPERIOR COURT
Civil Action
Docket No. CV-18-0018

NICHOLAS W. DANTON, ANASTASIA
V. DANTON, JAMES J. V. DANTON,
and PETER DANTON,

Plaintiffs,

ORDER ON PENDING MOTIONS

v.

GEORGE J. KERR and
JAMES M. KERR,

Defendants.

Before the court are plaintiffs' two motions for leave to amend the complaint and

defendants' motion to dismiss the complaint. As set forth below, the second motion for

leave to amend is granted in part and denied in part; the first motion for leave to amend

is dismissed; and the motion to dismiss is denied. In light of the confusing procedural

history of the case and in order to clarify the court's rulings, a brief procedural summary

follows.

## I. Procedural Background

Nicholas Danton, Anastasia V. Danton, James J. V. Danton, and Peter Danton

filed a six-count complaint against George J. Kerr and James M. Kerr on February 8,

2018. After defendants were served but prior to the extended deadline for filing of the

answer, plaintiffs filed an amended complaint pursuant to M.R. Civ. P. 15(a).

On May 11, 2018, defendants moved to dismiss the amended complaint, arguing

it "is so devoid of factual detail that it fails to satisfy the required pleading standards

1

under Rules 8 and 9 of the Maine Rules of Civil Procedure."[1] (Defs.' Mot. Dismiss 1.) On May 17, 2018, plaintiffs filed an opposition to this motion and also filed their first motion for leave to amend the previously amended complaint.

On June 21, 2018 plaintiffs filed a second motion for leave to amend. The proposed third amended complaint filed with plaintiffs' second motion to amend asserts the following causes of action: breach of contract (count I); breach of contract (third party beneficiaries) (count II); promissory estoppel (count III); negligent misrepresentation (count IV); unjust enrichment (count V); fraud (count VI); forgery/conversion (count VII), forgery (count VIII); violation of the Uniform Commercial Code (count IX); deceit/intentional misrepresentation (count X); detrimental reliance (count XI); and punitive damages (count XII).[2] Defendants have moved to dismiss and have oppose the motions for leave to amend asserting that amendment would be futile because the proposed new claims are subject to dismissal.

## II. Allegations in Third Amended Complaint

All of the parties are related. Defendants George and James Kerr are brothers. Their first cousin is William Danton. Plaintiff Anastasia Danton is William Danton's wife. Plaintiffs Nicholas, James and Peter Danton are William's sons. (See Third Am. Compl. ¶¶ 11, 14.)

---

[1] Defendants additionally requested at the time this motion was filed that plaintiffs be ordered to submit a more definite statement if the motion to dismiss is denied. Because plaintiffs have effectively done so by submitting amended versions of their initial complaint, this request is moot.

[2] The original complaint as initially amended included six counts: breach of contract; breach of contract (third party beneficiaries); promissory estoppel; detrimental reliance; unjust enrichment; and fraud. The proposed second amended complaint included a more detailed description of the factual bases of plaintiffs' claims; changed "detrimental reliance" to negligent misrepresentation; and brought additional claims for "forgery/conversion" and punitive damages. The proposed third and final amended complaint seeks to add claims for forgery, UCC violation, deceit/intentional misrepresentation and detrimental reliance.

In February of 2012, the parties entered into a written contract providing that defendants would preserve plaintiffs' home in Old Orchard Beach (the "House") for the plaintiffs' benefit by "clear[ing] and discharg[ing] claims against the aforesaid realty brought by *inter* alia, creditors of William Danton . . .." (Third Am. Compl. ¶¶ 10-11.) In exchange, plaintiffs promised to transfer any interests they held in several businesses to the defendants. Pursuant to this agreement, plaintiffs executed one or more membership pledge agreements, transferring their business interests to defendants. (Third Am. Compl. ¶¶ 12, 13, 15.)

Plaintiffs allege that defendants represented that they would commit up to one million dollars to preserve the House (but also simultaneously represented that they were insolvent). (Third Am. Compl. ¶ 55.) Plaintiffs allege that defendants intentionally and knowingly made false representations in order to induce them (plaintiffs) to execute the pledge agreements before defendants actually performed their end of the agreement, namely that they (defendants) were insolvent and needed the businesses as collateral in order to borrow sufficient funds to preserve the House. (See Third Am. Compl. ¶¶ 55, 57-60.) Plaintiffs further allege that defendants breached their agreement to preserve the House by failing or refusing to submit a bid on the property when it was subsequently auctioned off to pay creditors. (Third Am. Compl. ¶¶ 16-18.) Finally, plaintiffs allege that defendants forged plaintiff James Danton's signature on a stock pledge agreement and represented to other businesses that the signature was authentic. (Third Am. Compl. ¶¶ 61, 63.)

### III. Discussion

#### A. Plaintiffs' Motion to Amend

Rule 15(a) provides that leave to file an amended complaint "shall be freely given when justice so requires." Motions for leave to amend are "committed to the sound

3

discretion of the trial court;" when a proposed amendment would add a cause of action that fails under Rule 12(b)(6), "the court is well within its discretion in denying leave to amend." *Glynn v. City of S. Portland*, 640 A.2d 1065, 1067 (Me. 1994), *citing Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 59 (1st Cir. 1990). Plaintiffs' second motion for leave to amend is granted, except as to the following claims.

### 1. Forgery

Count VIII of the third amended complaint asserts that defendants committed "the tort of forgery" against plaintiffs, and particularly James J. V Danton. Plaintiffs have not cited to any Maine case holding that forgery constitutes a tort or other civil cause of action. Even if forgery were considered a subspecies of fraud, as plaintiffs argue, they have failed to plead an essential element of fraud, namely justifiable reliance. This claim would not survive a Rule 12(b)(6) motion and accordingly the motion for leave to amend to add count VIII is denied.

### 2. UCC Violation

Count IX alleges a violation of 11 M.R.S. §§ 3-1401, 3-1407 by virtue of the alleged forgery of James Danton's signature being an "unlawful alteration" of an instrument; and seeks to discharge him "of any obligations/duties pursuant to the documents so forged/altered." (Third Am. Compl. ¶¶ 86-87.)

Article 3 of the UCC applies to negotiable instruments. 11 M.R.S. § 3-1102(1). Negotiable instruments are defined as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise[.]" 11 M.R.S. §§ 3-1104(1). The pledge agreements in issue have not been pleaded as negotiable instruments defined in Article 3 in that they are not promises to pay a fixed sum of money. Moreover, sections 3-1401 nor 3-1407 do not create a cause of action, but rather only provide for limited enforceability of altered negotiable instruments. At

4

most, the provisions establish affirmative defenses to collection actions. *See* 11 M.R.S. § 3-1401(Person not liable on negotiable instrument unless person or agent signed it); 11 M.R.S. § 3-1407(2) (Fraudulent alteration discharges party whose obligation is affected unless that party assents or is precluded from asserting the alteration.) Even a viable Article 3 cause of action had been pleaded, it would be time-barred. There is a three-year statute of limitations in Article 3. 11 M.R.S. 3-1118(7). The alleged forgery happened almost six years before the complaint was filed.

Therefore, because this claim would not survive dismissal under Rule 12(b)(6), the motion for leave to amend to add count IX is denied.

### 3. Intentional Misrepresentation

Count X asserts a claim for "Deceit/Intentional Misrepresentation." This is essentially the same cause of action as fraud. *Drilling & Blasting Rock Specialists, Inc. v. Rheaume*, 2016 ME 131, ¶ 17, 147 A.3d 824 ("intentional misrepresentation" claim a "variant" of fraud; same elements apply); *see also Valley v. Branch River Plastics*, 2014 Me. Bus. & Consumer LEXIS 12, *19, *citing Camden Nat. Bank v. D & F Properties, LLC.*, BCD-WB-RE-10-16 (Bus. & Consumer Ct. Oct. 3, 2011, *Nivison, J.*) ("In Maine, fraudulent misrepresentation and intentional misrepresentation have been treated as the same tort.") Because this claim is duplicative of the fraud claim, the motion for leave to amend to add count XI is denied. *Cf. Gleichman v. Rosa Scarcelli*, No. PORSC-CV-15-0539, 2017 Me. Super. LEXIS 6, *7 (Jan. 11, 2017) (dismissing punitive damages claim as redundant of other claims' prayers for relief).

### 4. Detrimental Reliance

Count XI asserts a claim for detrimental reliance. As far as this court is aware, there are no cases endorsing an independent cause of action for "detrimental reliance" without reference to another theory of recovery. *See Albert v. Wellwood Co.*, No. CV-86-

5

669, 1987 Me. Super. LEXIS 262 (Sept. 20, 1987) (*Lipez, J.*) ("A cause of action based solely on detrimental reliance does not exist in Maine. Rather, detrimental reliance is one of the elements of fraud.") The First Circuit Court of Appeals has also noted, "Promissory estoppel is the more common name for [detrimental reliance], but Massachusetts courts use both names." *Braunstein v. McCabe*, 571 F.3d 108, 114 n.2 (1st Cir. 2009).[3] The motion for leave to amend to add count XI is denied.

### 5. Punitive Damages

Count XII asserts an independent claim for punitive damages. As a general matter, punitive damages are a form of relief based on underlying tortious conduct, not an independent cause of action. *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 155 (Me. 1979); *see also Drinkwater v. Patten Realty Corp.*, 563 A.2d 772, 776 (Me. 1989) ("No matter how egregious the breach, punitive damages are unavailable under Maine law for breach of contract"); *Gleichman*, No. PORSC-CV-15-0539, 2017 Me. Super. LEXIS 6, *7 (punitive damages no an independent cause of action).

Since the assertion of punitive damages is not an independent cause of action, plaintiffs' motion to amend is denied with respect to adding punitive damages as a separate count. Because several tort claims survive this order (negligent misrepresentation, fraud, conversion) and because plaintiffs have alleged malice ("willful, wanton, malignant, malevolent, and outrageous" conduct), the dismissal of count XII does not bar recovery of punitive damages, provided plaintiffs satisfy the elements of proof to support both the underlying tortious conduct and the punitive damage claim.

---

[3] Plaintiffs argue that detrimental reliance is a separate cause of action because reliance damages are not recoverable in relation to a promissory estoppel claim. This assertion is incorrect. Restatement (Second) of Contracts § 90 cmt. d; *Harvey v. Dow*, 2011 ME 4, ¶ 12, 11 A.3d 303, *citing Stone v. Waldoboro Bank*, 559 A.2d 781, 782 (Me. 1989).

6

In sum, plaintiffs' second motion to amend the complaint is granted, except with respect to count VII (forgery/conversion), VIII (forgery), IX (UCC violation), X (intentional misrepresentation), XI (detrimental reliance), and XII (punitive damages), all of which are dismissed. Plaintiffs' first motion to amend is dismissed as moot.

## B. Defendants' Motion to Dismiss

In reviewing a Rule 12(b)(6) motion, courts "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123, 127. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.*, *quoting Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830. Averments of fraud are further subject to a heightened pleading standard and must be stated with particularity. M.R. Civ. P. 9(b). "The test . . . is not whether the complaint sets out a textbook definition of fraud, but whether defendant is fairly apprised of the elements of the claim." *TD Banknorth, N.A. v. Hawkins*, 2010 ME 104, ¶ 23, 5 A.3d 1042, *quoting* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 9.2 at 221 (2d ed. 1970).

### 1. Breach of Contract, Promissory Estoppel, Unjust Enrichment

Defendants contend that the claims set out in the complaint as initially filed for breach of contract (counts I & II),[4] promissory estoppel (count III), and unjust enrichment (count V) are vague, insufficient, and fail to meet the general pleading requirements of Rule 8. They also contend that an unjust enrichment remedy is only available when there is no contractual relationship, and therefore this claim is

---

[4] Count I alleges breach of contract. Count II alleges that plaintiffs are third party beneficiaries to a contract or contracts between William Danton and the defendants.

7

incompatible with the breach of contract claims in counts I and II. *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269.

While the complaint initially filed and first amended likely was deficient, the Third Amended Complaint does satisfy minimal pleading requirements for purposes of Rule 8 and Rule 12(b)(6) insofar as these claims are concerned. In addition, although plaintiffs may eventually be barred from recovery pursuant to unjust enrichment if a contract is proven, at this stage plaintiffs may plead for equitable relief in the alternative. *See Maples v. Contorakes*, No. BCD-CV-2018-02, 2018 Me. Bus. & Consumer LEXIS 14, *3-4 (April 13, 2018). Accordingly, defendants' motion to dismiss is denied as to counts I, II, III, and V.

### 2. Fraud and Negligent Misrepresentation

These claims as pleaded are sufficient, even under the heightened standard for fraud claims in Rule 9.

Defendants also contend that the "economic loss doctrine" bars plaintiffs' claims for the torts of negligent misrepresentation (count IV) and fraud (count VI). (Defs.' Opp. Pls.' Second Mot. Amend 4.) The doctrine, which arose in and is typically applied in product liability cases, bars recovery in tort for purely economic loss. *Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors*, 659 A.2d 267, 270 n.4 (Me. 1995). The policy behind the rule is that a dispute over the "value and quality" of a contract by itself should be governed by the terms of the contract, and not principles of tort. *Id.* (customer receives "insufficient product value" if product damaged or otherwise does not meet expectations; maintenance of product value and quality is purpose of express and implied warranties.)

8

It is unclear whether the doctrine would apply in these circumstances.[5] Even if it would apply, the economic loss doctrine "does not extend to claims of fraud where the alleged misrepresentation is independent of the contract, such as claims for fraud in the inducement." *Am. Aerial Servs. v. Terex USA, LLC*, 39 F. Supp. 3d 95, 111 (D. Me. 2014).[6] Plaintiffs allege that defendants intentionally misrepresented that (i) they would commit the funds necessary up to one million dollars to preserve and retain the family residence and (ii) that they were insolvent and thus needed plaintiffs to execute pledge agreements in order to obtain sufficient financing for the preservation project. These representations, and in particular the latter, bring this case under the "fraudulent inducement exception."

### 3. Conversion

Plaintiffs assert a "forgery/conversion" claim in count VII. Specifically, the complaint alleges that defendants forged the signature of James J. V. Danton and that in so doing they "stole and converted his identity, his consent, his authority and his material benefit and interest in the Danton-Kerr family business and ventures;" and those interests included realty, restaurants, bars, parking lots, and other intangible (chattel) and intangible supportive of and a part of the business." (Third Am. Compl. ¶¶ 74-75.)

---

[5] The question of whether the Law Court would apply the economic loss doctrine to a fraud claim, however, remains unanswered. *See Workgroup Tech. Partners, Inc. v. Anthem, Inc.*, No. 2:15-cv-00002-JAW, 2016 U.S. Dist. LEXIS 14007, at *36 (D. Me. Feb. 3, 2016), *citing American Aerial Services, Inc.*, 39 F. Supp.3d 95, 110 (D. Me. 2014).

[6] This exception is itself subject to a limitation: "[I]f the tort alleged is intentional or fraudulent misrepresentation by a seller to a buyer, but the misrepresentation only goes to the quality or quantity of the goods promised in the contract, then the economic loss doctrine bars the fraud claim." *Id.* (citations omitted) (internal quotation marks omitted). Here, in the context of a Rule 12(b)(6) motion, that does not appear to be the case—at least with respect to the representation of insolvency made in order to induce plaintiffs to sign the pledge agreements.

To establish conversion, plaintiffs must prove that (i) they had a property interest in the item(s) converted at the time of the alleged taking by the holder of the property and (ii) they made a demand for the property's return, which was refused by the holder. *Leighton v. Fleet Bank*, 634 A.2d 453, 457 (Me. 1993). Conversion is limited to personal property; real property is not subject to conversion claims. Horton & McGehee, *Maine Civil Remedies* § 18-4 at 358. Intangible personal property represented by and/or merged into tangible instruments or documents may be subject to conversion, such as for example intangible interests represented by promissory notes, bonds, bills of exchange, share certificates, and warehouse receipts, whether negotiable or non-negotiable, insurance policies and savings bank books. *Restatement (Second) of Torts*, § 242 cmt. b (1979); *Ne. Coating Techs., Inc. v. Vacuum Metallurgical Co.*, 684 A.2d 1322, 1324 (Me. 1996); Prosser & Keeton, *The Law of Torts*, 91-92 (5th Ed. 1984).

To the extent plaintiffs allege that defendants acquired and have refused to return James J. V. Danton's "material benefit and interest in the Danton-Kerr family businesses and ventures" by means of a document that was signed without his authority, a claim for conversion may lie for purposes of a motion to dismiss. James Danton's "identity," "authority," "consent," and interests in real estate, however, are not proper subjects of a conversion claim.

## Conclusion and Order

For the reasons set out above, the court dismisses as moot plaintiffs' first motion to amend and grants in part plaintiffs' second motion to amend with respect to the first seven counts (counts I – VII) of the third amended complaint. Defendants' motion to dismiss the claims set forth in these counts is denied. Plaintiffs' second motion to for leave to amend the complaint to add counts VIII, IX, X, XI, and XII of the third amended complaint is denied because they would not withstand a Rule 12(b)(6) motion.

10

Accordingly, the entry shall be:

"Plaintiffs' first motion to amend complaint dismissed as moot. Plaintiffs' second motion to amend complaint is granted as to counts I, II, III, IV, V, VI and VII of the third amended complaint; and denied as to counts VIII, IX, X, XI, and XII of the third amended complaint. Defendants' motion to dismiss is denied."

SO ORDERED

Dated: August 13, 2018

_____
Wayne R. Douglas
Justice, Superior Court

**ENTERED ON THE DOCKET ON:** 8/13/18

11